ANNE CANNON REYNOLDS, A MINOR, ACTING BY AND THROUGH HER NEXT FRIEND, J. F. CANNON, AND ANNE CANNON REYNOLDS II, A MINOR, ACTING BY AND THROUGH HER NEXT FRIEND, HOWARD RONDTHALER, v. ZACHARY SMITH REYNOLDS, A MINOR, W. N. REYNOLDS AND R. E. LASATER, GENERAL GUARDIANS OF SAID MINOR, ZACHARY SMITH REYNOLDS, SAFE DEPOSIT AND TRUST COMPANY OF BALTIMORE, AS TRUSTEE UNDER THE WILLS OF R. J. REYNOLDS AND KATHERINE S. JOHNSTON, RICHARD J. REYNOLDS, MARY REYNOLDS BABCOCK, CHARLES BABCOCK, NANCY REYNOLDS BAGLEY, HENRY WALKER BAGLEY, W. N. REYNOLDS AND R. E. LASATER, GUARDIANS OF NANCY REYNOLDS BAGLEY, HARDIN W. REYNOLDS, ETHEL R. REYNOLDS, SUE R. STALEY, THOMAS STALEY, A. D. REYNOLDS, GRACE REYNOLDS, HOGE REYNOLDS, SCOTTIE REYNOLDS, R. S. REYNOLDS, LOUISE REYNOLDS, CLARENCE REYNOLDS, EDNA REYNOLDS, NANCY L. LASATER, R. E. LASATER, LUCY L. STEDMAN, J. P. STEDMAN, MARY LYBROOK, SAM LYBROOK, D. J. LYBROOK, CHINA LYBROOK, ANNIE D. REYNOLDS, HARDIN W. REYNOLDS, KATHERINE REYNOLDS, WILLIAM N. REYNOLDS, LUCY R. CRITZ, W. N. REYNOLDS, KATE B. REYNOLDS, J. EDWARD JOHNSTON, J. EDWARD JOHNSTON, JR., J. EDWARD JOHNSTON, GUARDIAN OF J. EDWARD JOHNSTON, JR.

(Filed 1 November, 1935.)

1. **Appeal and Error A f: Evidence E d—Ordinarily an admission of an attorney is binding on his client.**

Where a party, through her duly appointed attorney, states in her brief on appeal from a judgment based upon a family agreement for the distribution of the proceeds of trust estates, that she asks nothing further for herself, but is interested only in presenting the rights of her minor infant, represented in the action by a next friend duly appointed, such party may be heard on appeal as an *amicus curæ* as the mother and natural guardian of her infant.

2. **Infants A d—Court has equitable power to ratify and approve a contract affecting the interest of an infant in trust estates.**

Where an infant has a contingent interest in trust estates, consisting of real or personal property, the courts, in their equitable jurisdiction, have the power to ratify and affirm a contract affecting the infant's interest therein in order that the estates may not be wasted in litigation and in order that the original intention of the trustors may be effectuated and not defeated by the happening of unforeseen contingencies, the best interest of the infant being the guiding principle in determining whether the contract should be ratified and affirmed.

3. **Executors and Administrators F e—Judgment for distribution of trust estates in accordance with family agreement affirmed in this case.**

Judgment was entered in this cause ratifying and affirming a family agreement for the distribution of funds held in trust under the provisions of the wills and deed executed by the parents of the primary beneficiary, whose interest was contingent upon his reaching the age of twenty-eight. Thereafter, the guardian of an infant having a contingent interest in the trust estates filed a motion in the cause, under authorization of the courts, to set aside the judgment so far as it affected the interest of its ward. The primary beneficiary died prior to the filing of the motion and before he reached the age of twenty-eight. All persons having a vested or contingent interest in the estates were made parties, the minors, both *in esse* and *in posse*, being represented by next friends or guardians *ad litem*, duly appointed. Before hearing the motion, a family agreement was submitted to the court, which agreement modified in certain respects the original judgment, the relations between the parties having been changed by events happening subsequent to the entering of the original judgment. It appeared that the rights of the respective parties depended, among other matters, upon the validity of the original judgment, upon the validity of a will executed by the primary beneficiary, in which he attempted to exercise the power of appointment under the terms of the trusts, the validity of a divorce decree obtained by the first wife of the primary beneficiary, the construction of the trust instruments, and that there were *bona fide* controversies between the parties, and that the cost of litigation would consume a large part of the estates. The trial court heard evidence, found the facts, and entered judgment ratifying and affirming the family agreement. *Held:* It appearing that the judgment carried out the intent of the trustors, which would otherwise have been defeated by the happening of the unforeseen contingencies, and was just, fair, and equitable between the parties, the judgment was properly entered in the equitable jurisdiction of the court.

4. **Actions B a—**

Legal and equitable rights and remedies are now determined in one and the same action. Const. of N. C., Art. IV, sec. 1.

5. **Courts A a—**

Under the provisions of N. C. Const., Art. IV, secs. 1 and 20, the Superior Courts are the successors of the courts of equity, and exercise their equitable powers, unless restrained by statute.

**6. Same—**

The Superior Courts have equitable jurisdiction to affirm and approve family agreements for the distribution of trust estates created by will in order to effectuate the intent of the trustors when such intent would otherwise be defeated by the happening of unforeseen contingencies.

**7. Appearance A a—Appearance in this case held to give courts personal jurisdiction over party making such appearance.**

The trustee of trust estates created by wills personally appeared by filing answer to a suit instituted by the wife of the primary, contingent beneficiary affecting the income from the trust, in which action judgment was entered affirming a family agreement for the distribution of the proceeds of the trust estates, by filing answer to a motion in the cause by the guardian of a minor contingent beneficiary to set aside the judgment so far as it affected the interest of the minor, and by filing answer to a petition of the heirs setting forth a proposed settlement, and only in the last answer filed did the trustee question the jurisdiction of the court on the ground that the trust *res* were beyond the jurisdiction of the court. *Held:* The appearance was a general appearance, giving the court personal jurisdiction over the trustee.

**8. States A a—Courts of this State held to have jurisdiction over trust estates created by wills probated here and executed by residents.**

The trust estates in question were created by wills of residents of this State, which wills were probated in this State, in the county of the domicile of the testators. The beneficiaries of the trust estates were residents at the time of the probate of the wills, and the wills provided that residents of this State might change the trustee at any time. *Held:* The courts of this State have primary jurisdiction over the trust estates, although the trustee named in the wills is a nonresident and the trust *res*, consisting of personalty, is held by the trustee in the state of its residence.

**9. Taxation C h—Settlement of claim for transfer tax by agreement of parties approved by court of competent jurisdiction is upheld.**

The primary contingent beneficiary of trust estates created by will died prior to the happening of the contingency upon which the estates were to vest in him, but before his death attempted to exercise the power of disposition by will in accordance with the terms of the trusts. The validity of the will and the exercise of the power of disposition provided for in the trusts was attacked by certain contingent beneficiaries of the trusts, and thereafter a family agreement was submitted to the court for the disposition of the trust estates. All persons having any interest in the estates, contingent or vested, were made parties, including the State upon its claim of inheritance or transfer taxes, N. C. Code, 7880 (1) (5). The compromise between the parties for the distribution of the estates and with the State for the payment of a stipulated sum in discharge of the claim for taxes was approved by the court after hearing evidence. *Held:* The settlement of the taxes by compromise, in the court of competent jurisdiction, in view of the *bona fide* controversies between the parties, and the facts and circumstances of the case, is affirmed on appeal, the matter being a legitimate subject of compromise and all parties affected being duly represented.

**10. Same—**

A liberal construction will be given to inheritance tax statutes to the end that all property fairly and reasonably coming within their provisions may be taxed.

APPEAL by Annie L. Cannon, coguardian of Anne Cannon Reynolds II, Anne Cannon Reynolds I (now Smith), and Safe Deposit and Trust Company of Baltimore, trustee, from *Moore, Special Judge,* at March Special Term of FORSYTH. Affirmed.

The following judgment was rendered in the court below:

"This cause coming on to be heard before his Honor, Clayton Moore, judge presiding, at the 11 March, 1935, Term of the Superior Court of Forsyth County, and being heard at the said term of said court, upon the pleadings filed herein and the evidence offered by the respective parties in interest, the court, upon consideration thereof, finds the following facts:

"1. That, in this action as originally constituted, the Cabarrus Bank and Trust Company, one of the duly appointed guardians of Anne Cannon Reynolds II, filed a motion on 30 April, 1934, to set aside the original judgment entered herein on 4 August, 1931, in so far as said judgment attempted to affect the rights of the said Anne Cannon Reynolds II, in the trust estates created by her paternal grandparents, hereinafter referred to.

"2. Upon the filing of said motion, an order was duly entered herein making Annie L. Cannon, coguardian of the said Anne Cannon Reynolds II, a party defendant herein, and ordering her to show cause why the said motion should not be allowed; the said order also commanding the original defendants herein to file any answer which they, or any of them, might have to said motion within twenty days from the service of said order; and that said order, together with a copy of said motion, was duly served upon the original defendants herein, and upon the said Annie L. Cannon, one of the guardians of Anne Cannon Reynolds II.

"3. That, subsequent to the order referred to in the preceding paragraph, the Safe Deposit and Trust Company of Baltimore, as trustee under the will of R. J. Reynolds and as trustee under the will and deed of Katherine S. Johnston, duly filed an answer to the motion referred to in paragraph one hereof; and that all the other original defendants herein duly filed an answer to said motion.

"4. That, subsequent to the service of the order referred to in paragraph two hereof, Annie L. Cannon, coguardian of Anne Cannon Reynolds II, duly filed herein her motion or response to the motion referred to in paragraph one hereof.

"5. That, subsequent to the filing of the motion referred to in paragraph one hereof, the following persons have been duly made parties

hereto: Maxie Smith Dunn, Albert B. Walker, John S. Graham, Christopher Smith Reynolds, an infant, Charles Henry Babcock III, an infant, Barbara Frances Babcock, an infant, Nancy Jane Bagley, an infant, Richard J. Reynolds, Jr., an infant, Mary Katherine Babcock, an infant. That R. C. Vaughn, a citizen and resident of Forsyth County, has been duly appointed next friend for the infant Christopher Smith Reynolds; that a guardian *ad litem* has been duly appointed for the other infants hereinabove named; that serving of process herein has been duly made upon said infants and upon said guardian *ad litem;* and that, by an order heretofore entered herein, P. Frank Hanes was duly appointed guardian *ad litem* for any and all persons who may hereafter be born interested in the determination of the issues raised by the pleadings herein, and service of process herein has been duly made upon said P. Frank Hanes, guardian *ad litem.*

"6. That, subsequent to the filing of the motion referred to in paragraph one hereof, the said Christopher Smith Reynolds, by his next friend, R. C. Vaughn, filed an interplea herein setting forth his alleged rights in the trust shares therein referred to; and that the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, duly filed an answer to said interplea.

"7. That, subsequent to the filing of the motion referred to in paragraph one hereof, Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley duly filed herein an offer of settlement and petition thereon, proposing a settlement of any and all rights and interests in the trust shares herein referred to, upon the terms and provisions set forth in said offer as amended; that, upon the filing of said offer, an order was duly entered therein directing that said offer of settlement and petition be filed with the clerk of this court, and that copies thereof be mailed by said clerk to all the parties to this action, or to their counsel, or to their duly constituted attorneys in fact, and that all parties hereto have thirty days from the date of said order within which to file an answer to said offer of settlement and petition thereon; and that said order has been duly complied with.

"8. That an order was duly entered herein making a party to this action the State of North Carolina on relation of A. J. Maxwell, Commissioner of Revenue; and that, pursuant to said order, a complaint was filed herein on behalf of the State, alleging that, under the Revenue Laws of North Carolina, the Commissioner of Revenue is entitled to receive and collect from the descendants of R. J. Reynolds, deceased, and Katherine S. Johnston, deceased, a large sum of money as inheritance tax upon the grounds set forth in said complaint.

"9. That, subsequent to the proceedings hereinabove referred to, an order was duly entered herein that notice, together with copies of the

pleas of intervention of A. J. Maxwell, Commissioner of Revenue, and of Christopher Smith Reynolds, as well as a copy of the offer of compromise and settlement aforesaid, forthwith issue out of this court to each of the infants who are parties to this cause, and the next friend or guardian *ad litem* of each infant, and the general guardians of Anne Cannon Reynolds II, and of J. Edward Johnston, Jr., requiring each and all of said parties to appear herein within thirty days from the date of the service of said notice and copies, and file such plea, answer, or response as they might deem advisable; and that, pursuant to said order, said notice, together with the copies therein referred to, were duly served upon the parties described in said order.

"10. That thereafter, the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, duly filed a response to said offer of settlement of Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, referred to in paragraph seven hereof.

"11. That thereafter the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, duly filed a response to the complaint of the State of North Carolina on the relation of A. J. Maxwell, Commissioner of Revenue, referred to in paragraph eight hereof.

"12. That thereafter Christopher Smith Reynolds, by his next friend, R. C. Vaughn, filed a response to the offer of settlement of Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, referred to in paragraph seven hereof.

"13. That thereafter the Safe Deposit and Trust Company of Baltimore, trustee under the will of R. J. Reynolds, and trustee under the will and deed of Katherine Smith Johnston, specially appearing under protest, filed an answer to said offer of settlement referred to in paragraph seven hereof.

"14. That thereafter Anne Cannon Smith filed an answer and response 'To all the motions, interpleadings, proposals, and acceptances filed by the various parties herein.'

"15. That thereafter Annie L. Cannon, guardian of Anne Cannon Reynolds II, filed an answer in response to the offer of settlement referred to in paragraph 7 hereof, and answered the several complaints in the pleas, answers, and motions filed in this cause affecting the rights of her infant ward.

"16. That thereafter Christopher Smith Reynolds, by his next friend, R. C. Vaughn, filed a reply to the response of Anne Cannon Smith referred to in paragraph fourteen hereof, and to the response of Annie L. Cannon, guardian referred to in paragraph fifteen hereof.

"17. That thereafter the Reynolds heirs filed an answer to the complaint of the State of North Carolina, and incorporated therein an offer of compromise of the claim of the State of North Carolina, which was amended as above stated.

"18. That thereafter, to wit: On 30 January, 1935, an order was entered herein directing that a copy of the offer of compromise referred to in the preceding paragraph, and a copy of said order, be mailed by the clerk of this court to counsel for all parties, and that all parties, within ten days from the date of said order, by filing answers to said proposal, show cause why said proposal should not be accepted and approved by the court, and that said order was duly complied with.

"19. That thereafter, in accordance with the order referred to in the preceding paragraph, responses to the offer of compromise of the tax claim referred to in paragraph seventeen hereof was duly filed on behalf of Christopher Smith Reynolds, and also by the Cabarrus Bank and Trust Company as one of the guardians of Anne Cannon Reynolds II, and also by the Safe Deposit and Trust Company, trustee.

"20. That thereafter the Reynolds heirs filed a reply to the answer and response of Annie L. Cannon, one of the guardians of Anne Cannon Reynolds II, and in said answer requested that they be allowed to withdraw the proposal of settlement referred to in paragraph seven hereof, unless the court would proceed to consider and act upon and approve the said proposal of settlement; and the Cabarrus Bank and Trust Company filed an objection to such withdrawal, and that Christopher Smith Reynolds, by his next friend, R. C. Vaughn, filed an objection to such withdrawal.

"21. That thereafter the Cabarrus Bank and Trust Company filed a reply to the answer and response of Annie L. Cannon, referred to in paragraph fifteen hereof, and to the answer and response of Anne Cannon Smith, referred to in paragraph fourteen hereof.

"22. That thereafter P. Frank Hanes, guardian *ad litem* for Richard J. Reynolds, Jr., Mary Katherine Babcock, Charles Henry Babcock III, Barbara Frances Babcock, Nancy Jane Bagley, W. N. Reynolds II, and for any unborn persons interested in the determination of this cause, duly filed an answer to all the pleadings filed by all parties herein since the commencement of the present proceedings by the motion of Cabarrus Bank and Trust Company and the order of Hon. P. A. McElroy, judge of the Superior Court, under date of 30 April, 1934.

"23. That thereafter the defendants W. N. Reynolds, Mary E. Lybrook, T. F. Staley, Jr., W. A. Lybrook, Nancy L. Lasater, H. W. Reynolds, Lucy Reynolds Critz, D. J. Lybrook, Richard S. Reynolds, J. H. Reynolds, Clarence K. Reynolds, Lucy L. Stedman, Samuel M. Lybrook, Hardin W. Reynolds, and A. D. Reynolds filed an answer to all pleadings filed in this cause since their answers filed on 24 October, 1934.

"24. That J. Edward Johnston, Jr., by his guardian, J. Edward Johnston, filed an answer to the offer of settlement and petition therein, interplea of Christopher Smith Reynolds, and the complaint of the State

of North Carolina on relation of A. J. Maxwell, Commissioner of Revenue.

"25. That the parties to this proceeding are all properly before the court; that either a next friend or a guardian *ad litem* has been duly appointed for each and every infant, whether born or unborn, who is now or may hereafter be in any way interested in the trust shares hereinafter mentioned; that all persons, whether minors or of age, and whether *in esse* or *in posse,* who are now or who may hereafter be interested in the trust shares hereinafter mentioned, have been made parties to this action, and have either appeared herein, or been duly served with process herein and with copies of all the foregoing pleadings.

"26. That, on 29 July, 1918, R. J. Reynolds died in Forsyth County.

"27. That, at the time of his death, and for a long number of years prior thereto, the residence and domicile of the said R. J. Reynolds was and had been in Forsyth County, North Carolina.

"28. That the said R. J. Reynolds left surviving him his wife, Katherine Smith Reynolds, and four children, no child of the said R. J. Reynolds having predeceased him, and the four surviving children being named as follows: R. J. Reynolds, Jr., Mary Reynolds (Babcock), Nancy Reynolds (Bagley), Zachary Smith Reynolds (hereinafter referred to as the Reynolds heirs).

"29. That the said Zachary Smith Reynolds was the youngest of the said four children, having been born on 4 November, 1911, and, consequently, he would have arrived at the age of twenty-eight years on 4 November, 1939.

"30. That the said R. J. Reynolds left a last will and testament by the terms whereof, after a specific devise and after certain specific bequests, he devised and bequeathed a portion of the residue of his estates to his wife and devised and bequeathed other portions of the said residue of his estate to Safe Deposit and Trust Company of Baltimore as trustee, in trust for certain beneficiaries, with specific directions as to the collection and disbursement of the income of said trust estate, and with the provision that if and when each of said children became twenty-eight years of age, it should receive from said trustee certain property of the estate, and that subsection seven of said fourth item read as follows:

" '(7) Should any of my children die before he or she shall arrive at the age of twenty-eight (28) years, then the share of my estate which would have been payable to him or her, had he or she arrived at that age, shall be continued to be held by my said trustee for the use and benefit of his or her devisees by will until the time that such child would have arrived at the age of twenty-eight years, if he or she had lived, when the said trust shall cease and the estate shall then become payable to such devisees, the trustee, however, paying in the meanwhile the

income from said share to them; but should any of my children die before that time without having disposed of his or her share by will, but leaving issue him or her surviving, the share of said deceased child shall continue to be held by my said trustee for the use and benefit of his or her children living at his or her death, paying unto them or applying so much of the net income of the share of my child so dying as said trustee may deem necessary for their support and maintenance and accumulating the balance until the time my child so dying would have arrived at the age of twenty-eight years, if he or she had lived, when the trust shall cease and the estate shall then become vested in his or her children, then surviving; and, should any of my said children die without having made a testamentary disposition of his or her share of my said estate and without issue living at the termination of said trust, then his or her share shall be held on like trusts for my surviving children and the then living issue of my deceased children *per stirpes;* and, should all of my children and their issue die before the termination of the trusts, then, in that event, one-half of the trust estate in value at that time, principal and income, shall go to and belong to my said wife, and the other half to my brothers and sisters then living and the descendants then living of any of my deceased brothers and sisters, *per stirpes.'*

"31. That the said last will and testament of the said R. J. Reynolds was duly and regularly probated before the clerk of the Superior Court of Forsyth County on 12 August, 1918, and that, on 12 August, 1918, letters testamentary were duly issues by the clerk of the Superior Court of Forsyth County, North Carolina, to Katherine S. Reynolds, who was nominated and appointed by said will to act as executrix of that portion of the estate of the said R. J. Reynolds situated in the State of North Carolina at the time of his death.

"32. That a duly authenticated copy of said will was admitted to record in the Orphans' Court of Baltimore City; and that, on 5 September, 1918, by an order duly entered in said court, letters testamentary were issued to the Safe Deposit and Trust Company of Baltimore, a corporation duly organized and existing under the laws of the State of Maryland, with its principal office and place of business in Baltimore, Maryland, the said Safe Deposit and Trust Company of Baltimore having been nominated and appointed by the said will to act as executor of the estate of R. J. Reynolds, consisting principally of securities, stocks and bonds, which were deposited with the Safe Deposit and Trust Company of Baltimore.

"33. That the estate of the said R. J. Reynolds was duly settled and the residue thereof was distributed to the Safe Deposit and Trust Company of Baltimore as trustee under the will of the said R. J. Reynolds; that said trustee duly qualified and has ever since acted as such under

the terms and provisions of said will; that, acting in said capacity, the said trustee received the trust estate and now holds separately the securities and personal property set aside and so constituting the trust of which the said Zachary Smith Reynolds was the first beneficiary, and has prepared and now has available a complete record in reference to the securities and properties so held.

"34. That, subsequent to the death of Katherine S. Johnston hereinafter referred to, a question arose as to the amount of net income distributable to each child of the testator, R. J. Reynolds, after attaining the age of twenty-one years, and before attaining the age of twenty-eight years, said question involving a construction and interpretation of the will of the said R. J. Reynolds; that, in order to have said question determined, the said Safe Deposit and Trust Company of Baltimore, trustee, instituted an appropriate action in the Superior Court of Forsyth County, North Carolina, wherein said question was submitted to and determined by the court, a judgment settling said question being signed by Hon. W. F. Harding, judge presiding at the May, 1927, Civil Term of the Superior Court of Forsyth County, and that said judgment has ever since been complied with in the administration of said trust.

"35. That thereafter a further question arose in reference to the proper construction and application to be made of paragraph six of item four of the said will of R. J. Reynolds, and that thereupon an action was instituted in the Superior Court of Forsyth County by R. J. Reynolds (Jr.) against the said Safe Deposit and Trust Company of Baltimore, trustee, and others, for the purpose of obtaining a construction and application of said paragraph of said will; that, in said action, the said Safe Deposit and Trust Company of Baltimore, trustee, filed an answer; that a judgment was entered in said action, which, upon appeal, was affirmed by the Supreme Court of North Carolina, the opinion of said Court appearing in 201 N. C., beginning at page 267, and that said judgment has ever since been complied with in the administration of said trust.

"That one of the issues raised in said case between the trustee and the plaintiff Richard J. Reynolds as set out in the plaintiff appellant's brief filed in the Supreme Court of North Carolina was the following:

" '2. Whether, if the contention of the trustee is correct, the plaintiff is not entitled to include in his annual statement income received from his share of the trust estates of his father or mother, or both, as "earnings of money, stocks or bonds owned by him." '

"That in the appellant's brief in said cause, and especially on pages 27, 28, and 29, the argument was squarely presented to the Court, that the children of R. J. Reynolds owned vested interests in his estate with a period of postponed possession until they should respectively attain the

age of 28 years, subject only to be divested by death before arriving at that age, which argument was considered by the Court and expressly rejected, as appears in its opinion heretofore referred to.  That the appellant likewise contended that he owned a vested interest for life in the estate of his mother, which was likewise rejected by the Court. Therefore, the court holds as a matter of law that the children of R. J. Reynolds did not receive any vested interest in the trust estates of either their father or mother; that by the will of their father they had only the right to receive, if, as, and when payable, certain income from the said estate, and the possibility of receiving property vested both in interest and possession, if, as, and when they should respectively attain the age of 28 years; and that under the will of their mother they did not receive any vested interest, but merely the right to receive during their respective lives, if, as, and when payable, certain income from the said trust estate.

"36. That the said Katherine S. Reynolds, widow of the said R. J. Reynolds, was married to J. Edward Johnston on ... June, 1921.

"37. That, on 29 December, 1923, the said Katherine S. Johnston executed and delivered to the Safe Deposit and Trust Company of Baltimore a certain deed whereby she transferred and delivered to said company certain shares of stock in the R. J. Reynolds Tobacco Company to be held in trust for her four children named in paragraph four hereof, the said deed containing the following provisions:

" 'The Safe Deposit and Trust Company of Baltimore, as trustee hereunder, shall hold the share of each child for such child during its life, and upon its death shall distribute, transfer, and deliver the same to and among, or hold the same for such person or persons, objects or purposes, in trust or otherwise, as such child shall by its last will nominate and appoint to take the same, and in default of such appointment shall distribute, transfer, and deliver the same to the descendants of such child living at its death, *per stirpes* and not *per capita,* and in default of such appointment and in default of descendants of such child the said trustee shall at its death divide and distribute the same among such of said children and their descendants as are then living, *per stirpes* and not *per capila,* but the shares of such of her said children as are then living shall be held by said trustee in trust for them and upon the same trusts that their original shares are then held.'

"38. That the said Safe Deposit and Trust Company of Baltimore, upon the execution of the said deed of trust referred to in the preceding paragraph, duly qualified and has ever since acted as trustee under the terms and provisions of said deed; and that said trustee now holds in trust separately the shares of said stock set apart as the shares to be held in trust for the said Zachary Smith Reynolds under the terms of said

deed, and also holds the accumulations and reinvestments thereof; and has prepared and now has available a complete record in reference thereto.

"39. That the said Katherine S. Johnston died on 23 May, 1924.

"40. That at the time of her death, and for a long number of years prior thereto, the residence and domicile of said Katherine S. Johnston was and had been in Forsyth County, North Carolina.

"41. That the said Katherine S. Johnston left a last will and testament by the terms whereof, after certain specific bequests and devises, it was provided in Item VII of said will in part as follows:

" 'All the rest, residue, and remainder of my estate, and also the estate in the hands of the Safe Deposit and Trust Company of Baltimore, as trustee under the will of my deceased husband, Richard Joshua Reynolds, over which I have power of appointment, I give, devise, and bequeath to the Safe Deposit and Trust Company of Baltimore, in trust to divide the same in equal shares among such of my children and husband as survive me, my husband to take a share equal to that of a surviving child.

" 'My said trustee shall at once transfer and deliver the share herein given to my said husband, if he survives me, to be held by him in fee, absolutely free of any trust.

" 'My said trustee shall hold the share of each child for such child during its life, and upon its death shall distribute, transfer, and deliver the same to and among or hold the same for such person or persons, objects or purposes, in trust or otherwise, as such child shall by its last will nominate and appoint to take the same, and in default of such appointment shall distribute, transfer, and deliver the same to the descendants of such child living at its death, *per stirpes* and not *per capita,* and in default of such appointment and in default of descendants of such child my said trustee shall at its death divide and distribute the same among such of my husband, children, and descendants as are then living, *per stirpes* and not *per capita,* my said husband, if then living, shall take a share equal to that of a surviving child, but the shares of such of my children as are then living shall be held by said trustee for them and upon the same trusts that their original shares of my estate are then held.

" 'Provided, however, notwithstanding anything herein to the contrary, that if I shall leave surviving any child by my present husband, that such child's trust share shall be set aside entirely from my own absolute estate (no part thereof to be taken from the share of the estate of R. J. Reynolds over which I have power of appointment), but such share shall be equal in value to the share of each of my other children and my husband.

" 'Should, however, any of my children die before the trusts under the will of R. J. Reynolds have expired or become inoperative, leaving children or appointees entitled to its share of my estate, then my said trustee shall retain in its hands until that time in trust for those entitled to receive the same all shares of Class A Common stock of the R. J. Reynolds Tobacco Company as may then be in its hands as such trustee.'

"42. That the said last will and testament of Katherine S. Johnston was duly and regularly probated before the clerk of the Superior Court of Forsyth County on 29 May, 1924, and was duly recorded in the office of said clerk in Book of Wills 9, at pages 19-23; that on 29 May, 1924, letters testamentary were duly issued by the clerk to J. Edward Johnston, who was nominated and appointed by said will to act as executor of that part of the estate of said Katherine S. Johnston situated in North Carolina.

"43. That, upon the death of the said Katherine S. Johnston, and upon the probate of her will as above stated, the said Safe Deposit and Trust Company of Baltimore duly qualified and has ever since acted as trustee under the terms and provisions of said will; that a division of the estate and property devised and bequeathed in trust by said will has heretofore been made, including both the individual estate of said Katherine S. Johnston and the property disposed of by her in the exercise of the power of appointment conferred upon her by the will of her first husband, the said R. J. Reynolds, and that the said trustee now holds separately the property, consisting of bonds, stock, and securities, so set apart and now constituting the property thus held in trust of which the said Zachary Smith Reynolds was entitled to receive certain income, including separately such property of the individual estate of the said Katherine S. Johnston and such of the property so disposed of by her in the exercise of her said power of appointment; and that the said trustee has prepared and now has available a complete record in reference to the securities and property so held.

"44. That, surviving her, the said Katherine S. Johnston left her husband, J. Edward Johnston, the four children of her marriage with R. J. Reynolds named in paragraph 28 hereof, and one child of her marriage with the said J. Edward Johnston, the last mentioned child being named J. Edward Johnston, Jr.; and that no other child of the said Katherine S. Johnston survived her.

"45. That, on 16 November, 1929, Zachary Smith Reynolds was married to Anne Cannon, hereinafter referred to as Anne Cannon Reynolds I.

"46. That, on 23 August, 1930, Anne Cannon Reynolds II was born of the union referred to in the preceding paragraph.

"47. That, subsequent to the marriage referred to in paragraph forty-five hereof, the parties to said marriage separated and the said Anne Cannon Reynolds II was left with her mother.

"48. That on 4 August, 1931, this action was instituted in the Superior Court of Forsyth County, that as will appear from the record herein, all of the court papers in said action were filed on the same day, to wit: 4 August, 1931, said papers including the petition for the appointment of next friends of Anne Cannon Reynolds I and Anne Cannon Reynolds II, both of whom were minors, the order appointing next of friends of said minors, the complaint, the application for the appointment of the guardian *ad litem* of any unborn persons interested in said action, the answers therein, and the judgment of the court. That the Cabarrus Bank and Trust Company, guardian of Anne Cannon Reynolds II, has contended and has introduced evidence to show that prior to the entry of said judgment no evidence was introduced upon which to base said judgment; that the said proceedings were purely formal, and has presented argument to the court that the decree of the court was void by reason of the inadequacy of the investigation made by the court, and the inherent lack of power in the court to enter the judgment which was entered. The defendants Richard J. Reynolds, Mary R. Babcock, Nancy R. Bagley, and other persons generally designated in this decree as the Reynolds heirs, have introduced evidence to show that the said action was in accordance with the practice of the court, that evidence was introduced upon all material points, and that the court was fully informed as to all of the facts required for forming a judgment, and have presented argument to the court to show that the said judgment was within the power of the court, and cannot now be attacked upon any of the grounds alleged by the Cabarrus Bank and Trust Company.

"That the infant, Christopher Smith Reynolds, through his next friend, R. C. Vaughn, has contended that the said judgment was valid and binding. That Annie L. Cannon, guardian of Anne Cannon Reynolds II, contends that after the judgment of the Supreme Court in the Cabarrus proceeding, reported in 206 N. C., 276, she knows of no reason why the decree should be set aside, but prays the court that her ward be relieved of the specific performance thereof.

"The court does not decide any of the issues thus raised and presented by the parties, but does find as a fact and holds as a matter of law that the issues of law and facts existing between the parties as to the validity of the judgment of 4 August, 1931, are sufficiently uncertain that a settlement thereof as proposed by the defendants Richard J. Reynolds, Mary R. Babcock, and Nancy R. Bagley is proper, and that it is for the best interest of all the parties to this cause, and especially of Anne Cannon Reynolds II, Christopher Smith Reynolds, and all of the other

minor parties whose legal representatives have requested the instructions of the court; that the said issues of law and fact be settled and adjusted as provided in this decree.

"49. That prior to his death, to wit: On or about 21 August, 1931, the said Zachary Smith Reynolds executed an instrument in the form of a will complying with the laws of the State of New York as to the execution of wills by residents of that state, and also complying with the requirements of C. S., 4131, as to the formalities for the execution of a will under the laws of the State of North Carolina, stating therein that he was a resident of Port Washington, Nassau County, in the State of New York; that in said paper the said Zachary Smith Reynolds undertook to execute the powers of appointment conferred upon him by the will of his father, R. J. Reynolds, and by the will and deed of his mother, Katherine S. Johnston, in favor of his brother, R. J. Reynolds, Jr., and his two sisters, Mary Reynolds Babcock and Nancy Reynolds Bagley, to the practical exclusion of all other persons, including his then living child, Anne Cannon Reynolds II, and his then wife, Anne Cannon Reynolds I, which said will referred to and ratified the judgment in this cause under date of 4 August, 1931, and made no further provision for Anne Cannon Reynolds II and Anne Cannon Reynolds I, other than a bequest of $50,000 to each of them.

"50. That Zachary Smith Reynolds' twenty-first birthday would have occurred on 4 November, 1932; that at the time of the execution of the instrument referred to in paragraph 49 the general and testamentary guardians of the said Zachary Smith Reynolds were his uncle, W. N. Reynolds, and R. E. Lasater, who were domiciled in and residents of Forsyth County in the State of North Carolina, and they continued to act and were so domiciled until the date of the death of Zachary Smith Reynolds on 6 July, 1932; that the domicile of Zachary Smith Reynolds at the date of his death and at the date of the execution of the instrument referred to in paragraph 49 was in North Carolina; that a minor is without power to establish a domicile of choice, and that marriage does not change his status; that even if Zachary Smith Reynolds had the power to adopt a domicile of choice and to execute a will in the State of New York at the date of his death, which would affect his personal estate absolutely owned, such a will would not exercise the powers of appointment under the will of his father, R. J. Reynolds, and the will and deed of his mother, Katherine S. Johnston.

"51. That on or about 23 November, 1931, Anne Cannon Reynolds I obtained a judgment of divorce from her husband, Zachary Smith Reynolds, in the Second Judicial District Court of the State of Nevada, in and for the county of Washoe. That evidence has been introduced and argument presented to the court by parties whose interests are

adverse to that of Christopher Smith Reynolds, to the effect that the said judgment of divorce rendered by the court of Nevada is invalid, both by reason of defects inherent in the judgment itself and by further reason of the fact that Anne Cannon Reynolds I did not have a legal residence in the State of Nevada at the time of entry of said judgment, and have further presented argument that by reason of the fact that said judgment of divorce was void that the marriage between Zachary Smith Reynolds and Elizabeth Holman Reynolds, on 29 November, 1931, in Monroe, Michigan, was not valid.

"The infant, Christopher Smith Reynolds, has introduced evidence and presented argument to show that the said Anne Cannon Reynolds I was a *bona fide* resident of the State of Nevada both at the time of the entry of the said judgment of divorce and at the time said proceedings for divorce were commenced. That said divorce was obtained in good faith by the said Anne Cannon Reynolds I and the judgment accepted in good faith by both Anne Cannon Reynolds I and Zachary Smith Reynolds, and that subsequent to the entry of the said judgment both Anne Cannon Reynolds I and Zachary Smith Reynolds remarried. That said action was in accordance with the practice of the courts of Nevada; that evidence was introduced upon all material points; that the court was fully informed as to all the facts required for forming a judgment; that the court had jurisdiction of the persons of both plaintiff and defendant, and that said judgment of divorce was binding not only on the State of Nevada but under the Constitution of the United States it is also binding upon every other jurisdiction within the United States of America, and that consequently the marriage of Zachary Smith Reynolds to Elizabeth Holman Reynolds in Monroe, Michigan, on 29 November, 1931, was a valid marriage.

"The court does not decide any of the issues thus raised and presented by the parties, but does find as a fact and holds as a matter of law that the issues of law and fact existing between the parties as to the validity of the judgment of the divorce are sufficiently uncertain as to provoke long, continuous, expensive, and vexatious litigation, and that a settlement thereof, as proposed by the Reynolds heirs, is proper, and that it is for the best interest of all the parties to the cause, and especially to Anne Cannon Reynolds II and Christopher Smith Reynolds, and all of the other minor parties whose legal representatives have requested instructions of the court.

"52. That, on 29 November, 1931, the said Zachary Smith Reynolds was married to Elizabeth Holman in Monroe County, Michigan, and said parties continuously resided together thereafter until his death.

"53. That, on 6 July, 1932, the said Zachary Smith Reynolds, being still under the age of twenty-one years, died in Winston-Salem, North

Carolina; and that the other three children of R. J. Reynolds named in paragraph twenty-eight hereof are still living and are of lawful age; that R. J. Reynolds attained the age of twenty-eight years on 4 April, 1934.

"54. That the said Elizabeth Holman Reynolds survived the said Zachary Smith Reynolds, and that, subsequent to his death, to wit: On 10 January, 1933, Christopher Smith Reynolds was born of said union; that no child of said Zachary Smith Reynolds predeceased him; and that, therefore, the said Zachary Smith Reynolds left him surviving the following two children: Anne Cannon Reynolds II and Christopher Smith Reynolds.

"55. That on 24 March, 1933, the Safe Deposit and Trust Company of Baltimore, trustee under the two wills and the one deed heretofore mentioned, filed a bill of complaint in the Circuit Court of Baltimore City; that in said bill of complaint the said trustee set out in a full and complete manner all the facts in reference to the three trusts thereby established, attaching to said bill of complaint, as exhibits, exact copies of the three instruments above mentioned creating said trusts. That the said trustee further set out in said bill of complaint a copy of the entire proceedings in the Superior Court of Forsyth County referred to in paragraph forty-eight hereof, and a full and complete copy of the divorce proceedings of Anne Cannon Reynolds I in the Nevada court referred to in paragraph fifty-one hereof; that the said bill of complaint also set forth the alleged will executed by Zachary Smith Reynolds on 21 August, 1931, referred to in paragraph forty-nine hereof, and attached to said bill as an exhibit a copy of said will; and that the said trustee thereafter, in said bill of complaint, expressly requested the court to assume jurisdiction of the three trusts herein mentioned, and to determine and decide what disposition should be made of the trust estates in controversy in this action, and in doing so, expressly raised the following questions of law and fact for determination:

"(a) The effect of the Forsyth judgment mentioned in paragraph forty-eight hereof upon the rights of the infant, Anne Cannon Reynolds II.

"(b) The validity of the divorce of Anne Cannon Reynolds from Zachary Smith Reynolds mentioned in paragraph fifty-one hereof.

"(c) The validity of the marriage of Elizabeth Holman Reynolds with Zachary Smith Reynolds, mentioned in paragraph fifty-two hereof.

"(d) The validity and effect of the alleged will executed in New York by Zachary Smith Reynolds referred to in paragraph forty-nine hereof.

"56. That the bill of complaint referred to in the preceding paragraph further set forth that serious questions had arisen relating to the disposition of the said trust estates hereinabove mentioned; that doubts had been suggested with respect to the interpretation of the wills and the

deed hereinbefore referred to, and as to the effect of the several proceedings and other matters hereinbefore mentioned and recited, and as to what disposition should be made of said trust estates, and to what extent the same should be held in further trust, or how and among what parties the same should be divided and distributed. That the said bill of complaint also alleged that the doubts so suggested included, among other matters, the validity of the original judgment entered herein on 4 August, 1931, in so far as it attempted to effect the rights of Anne Cannon Reynolds II, the validity of the divorce of the said Anne Cannon Reynolds I from Zachary Smith Reynolds, involving, among other questions, the *bona fides* of her residence in the State of Nevada at the time when said divorce was applied for and obtained; the validity of the marriage of the said Elizabeth Holman Reynolds with the said Zachary Smith Reynolds, involving the validity of said divorce from the first wife of said Zachary Smith Reynolds; the validity and effect of said instrument purporting to be executed as a will by the said Zachary Smith Reynolds, as a testamentary appointment by him in pursuance of the powers of appointment conferred upon him by the two wills and the one deed hereinbefore mentioned, such questions involving both the *bona fides* of any intended residence of his in the State of New York, and the further question as to whether, while still a minor, he could change his residence from the State of North Carolina to the State of New York, with or without the consent or the joinder of his legally appointed guardians in said former state, and the question whether Christopher Smith Reynolds was entitled to any interest in any of the said trust estates under the terms of said instrument.

"57. That on 5 November, 1931, by an order of the clerk of the Superior Court of Cabarrus County, Annie L. Cannon and Cabarrus Bank and Trust Company were duly appointed to act as guardians of Anne Cannon Reynolds II, and thereupon duly qualified, and have ever since acted in said capacity, the said Annie L. Cannon being the grandmother of the said Anne Cannon Reynolds II, and the Cabarrus Bank and Trust Company being a corporation duly organized and existing under the laws of the State of North Carolina, with its principal office and place of business in Concord, Cabarrus County, North Carolina.

"58. That subsequent to the decision of the Supreme Court in *The Matter of the Guardianship of Anne Cannon Reynolds II,* 206 N. C., 276, the Cabarrus Bank and Trust Company, guardian of Anne Cannon Reynolds II, conducted negotiations with other parties interested in said trusts in an effort to determine and settle the rights of all beneficiaries in the three trust estates hereinbefore mentioned, including all prospective or contingent beneficiaries therein; that said negotiations were carried on for the purpose of finally settling and determining all the diffi-

cult and troublesome questions, both of law and fact, involved in a legal and proper administration of said trusts; the purpose of the parties being to bring about a final determination and settlement of the controversies between Anne Cannon Reynolds II, Christopher Smith Reynolds, and the Reynolds heirs, hereinbefore referred to, and more particularly, the controversies as to (a) the validity of the original judgment entered herein; (b) the validity of the divorce of Anne Cannon Reynolds I from Zachary Smith Reynolds and his subsequent marriage to Libby Holman; and (c) the validity and effect of the will attempted to be made by the said Zachary Smith Reynolds in the State of New York; and after long, tedious, and painstaking consideration by the several attorneys representing the parties above mentioned, the proposal of R. J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley was filed herein, suggesting a determination and settlement of all questions, both of fact and of law, relating to the rights of all present, prospective, or contingent beneficiaries in the three trust estates hereinbefore mentioned, in order that all matters in controversy between said parties hereinbefore referred to might be determined and forever settled, so that said trust estates may be henceforth freed from doubt and uncertainty, and administered to the best interests of all parties concerned, and substantially in accordance with the real objects and purposes of the creators of said trust estates, considering the changed situation and condition of said parties in relation to each other, and the contingencies and uncertainties as to which of said beneficiaries would be entitled to receive said trust estates, and in what proportions.

"59. That unless the determination and settlement herein provided for is made, the parties to this action and the intended beneficiaries of the trusts established by R. J. Reynolds and Katherine S. Johnston will be plunged into extensive litigation, both in North Carolina and Maryland, and possibly elsewhere, which would doubtless extend over a number of years, and be attended with an enormous amount of expense, uncertainty, and risk; that, as a matter of fact, each of the beneficiaries hereafter named would run the risk of jeopardizing all interest in said trust estates. For instance, if the Reno divorce of Anne Cannon Reynolds I from Zachary Smith Reynolds should be held invalid, all rights of Christopher Smith Reynolds in said trust estates would be jeopardized; on the other hand, if the original judgment herein should be held valid, all rights of Anne Cannon Reynolds II in said trust estates other than those set forth in said original judgment, would be jeopardized; if the said judgment should be held invalid, the rights of the Reynolds heirs in said trust estates would likewise be jeopardized. That a failure of the suggested determination and settlement would thus relegate the parties to venturesome and probably disastrous litigation, thereby de-

feating the primary objects of the trusts above mentioned, and practically preventing an effectuation of the intentions of the creators of said trusts; whereas, the suggested determination and settlement would really accomplish the primary objects of said trusts, and would effectually carry out the intentions of the creators thereof.

"60. There further coming on to be heard in this cause the intervening complaint of the State of North Carolina, setting forth its claim for inheritance and estate taxes; and the court, upon presentation of said complaint, having read and considered the will of R. J. Reynolds and the will and deed of Katherine S. Johnston for the purpose of determining the nature, character, and extent of whatever interest, or interests, said wills and deed conferred upon Zachary Smith Reynolds, in the trusts thereby established, hereby finds and concludes as follows:

"(a) The will of R. J. Reynolds did not bequeath or devise to Zachary Smith Reynolds any vested interest or share in the trust estate (or any part thereof) created and established by said will. A proper construction and interpretation of said will shows that no part of the trust estate established thereby, and none of the accumulated income thereof, would have vested in the said Zachary Smith Reynolds unless and until he arrived at the age of twenty-eight years. Until the said Zachary Smith Reynolds arrived at said age of twenty-eight years, the only interest which he had in the trust estate established by said will (or any part thereof) was to receive such payment from the income thereof, if, as, and when payable to him, under the terms of said will. Consequently, upon the death of the said Zachary Smith Reynolds, prior to reaching the age of twenty-one years, no part of said trust estate (either *corpus* or income) was transferred from him to anyone.

"(b) The will of Katherine S. Johnston did not bequeath or devise to Zachary Smith Reynolds any vested interest or share in the trust estate (or any part thereof) created and established by said will. The only interest which the said Zachary Smith Reynolds had in said trust established by said will (or any part thereof) was to receive such payments from the income thereof, if, as, and when payable under the terms of said will.

"(c) The trust deed of Katherine S. Johnston to the Safe Deposit and Trust Company of Baltimore, dated 29 December, 1923, did not confer upon Zachary Smith Reynolds any vested interest or share in the trust (or any part thereof) created and established by said deed. The only interest which the said Zachary Smith Reynolds had in said trust established by said deed (or any part thereof) was to receive such payments from the income thereof, if, as, and when payable under the terms of said deed.

"(d) Upon the death of Zachary Smith Reynolds intestate, without exercising the powers of appointment conferred upon him by the will of R. J. Reynolds and by the will and deed of Katherine S. Johnston, the right of the State of North Carolina, under the 5th provision of section 7880 (1) of the Consolidated Statutes of North Carolina, to collect inheritance and estate taxes out of certain of the parties to this action presents difficult questions, which would doubtless result in long, expensive, and uncertain liitgation.

"(e) Negotiations have been conducted between the State of North Carolina and the attorneys for Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, in reference to a settlement by way of a lump sum compromise to satisfy and fully settle whatever right or claim the State of North Carolina may have, if any, on account of such taxes. As a result of said negotiations, a proposal has been made that a full settlement shall be made by way of a lump sum in compromise of any and all such right or claims, if any, which the State of North Carolina might or may have by reason of the facts set forth in the intervening complaint of the State of North Carolina in this action, by the payment to the State of North Carolina of the sum of two million dollars. The said Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, have expressed a willingness to pay said sum in full settlement of said claims, in so far as their interests may be affected, provided such settlement be approved by the court, in so far as the minors may be affected, such payment, however, to be made solely out of the trust estates created by the will of R. J. Reynolds and the will and deed of Katherine S. Johnston, of which Zachary Smith Reynolds was the first beneficiary, in proportion to their respective values at the date of this decree, nothing in this compromise offer or its acceptance and approval to impose any personal liability upon any of the parties to this action. The guardians of Anne Cannon Reynolds II and Christopher Smith Reynolds have requested the instructions and advice of the court in reference to participating in said settlement, in so far as the burden thereof may fall upon said minors.

"(f) Upon a thorough and complete consideration of all the facts and circumstances relating to the claim of the State of North Carolina for said taxes, the court finds as a fact that the settlement of the taxes herein referred to is for the best interest of all parties concerned, including the infants Anne Cannon Reynolds II and Christopher Smith Reynolds, and said settlement is hereby fully approved by the court, and the guardians of said infants are hereby advised, instructed, authorized, and empowered to participate in said settlement on behalf of said infants, and it is hereby ordered and decreed that the Safe Deposit and Trust Company of Baltimore, trustee, out of said trust funds, pay to the State of North

Carolina the sum of two million dollars in full settlement of any and all claims or demands which the State now has, or may hereafter have, by reason of the things and matters set forth in the intervening complaint herein, such payment to be made solely out of the trust estates created by the will of R. J. Reynolds and the will and deed of trust of Katherine S. Johnston, of which Zachary Smith Reynolds was the first beneficiary, in proportion to their respective values as of the date of this decree, and nothing herein to impose any personal liability upon any of the parties to this action. That the said sum of $2,000,000 is to be paid to the State of North Carolina when and if this decree becomes effective, and shall be in full settlement of any and every claim of the State of North Carolina for inheritance taxes, penalties, and interest.

"Wherefore, upon the findings of fact and conclusions of law hereinbefore and hereinafter set forth, it is hereby considered, ordered, and adjudged as follows:

"I. That the original judgment entered herein on 4 August, 1931, be and it hereby is modified as follows:

"(a) That the establishment of the trust fund of five hundred thousand dollars for the benefit of Anne Cannon Reynolds I, as therein provided for, is hereby approved, with the qualification that said trust fund shall henceforth be held by the Safe Deposit and Trust Company of Baltimore, trustee, only upon the following terms and provisions, to wit:

"That the said Anne Cannon Reynolds I shall be entitled to receive out of the net income arising therefrom, and there shall be paid to her therefrom monthly, the sum of six hundred ($600) dollars until she arrives at the age of twenty-five years, when the total accumulated income shall be paid to her, and thereafter all income shall be paid her monthly so long as she lives; that upon the death of the said Anne Cannon Reynolds I, the *corpus* of said trust fund, together with any and all undistributed income, shall be paid to Anne Cannon Reynolds II, if living; if Anne Cannon Reynolds II is not living at the death of Anne Cannon Reynolds I, then to be distributed to the next of kin of said Anne Cannon Reynolds II upon her mother's side to the exclusion of her next of kin on her father's side; provided further, that the *corpus* of said trust fund shall be held by the Safe Deposit and Trust Company of Baltimore, trustee, until the death of Anne Cannon Reynolds I, or 4 November, 1939, whichever shall occur last.

"(b) That the trust fund therein established for the benefit of said Anne Cannon Reynolds II, together with all accumulated or undistributed income thereon, shall be returned by the trustee to the trust estate of R. J. Reynolds, from which it was created by the decree of the Superior Court of Forsyth County, dated 4 August, 1931, and the rights of the parties in reference thereto shall be placed *in statu quo,* just as if

no action whatever in reference to said fund had ever been taken under said judgment.

"II. That the Safe Deposit and Trust Company of Baltimore, trustee,. shall hereafter hold the trust estate established by the will of R. J. Reynolds of which Zachary Smith Reynolds was the first beneficiary, and shall likewise hold the trust estate established by the will of Katherine S. Johnston of which Zachary Smith Reynolds was the first beneficiary, and shall likewise hold the trust estate established by the deed of Katherine S. Johnston, dated 29 December, 1923, of which Zachary Smith Reynolds was the first beneficiary, upon the following trusts, to wit:

"(a) First, to pay whatever State or Federal estate or inheritance taxes, if any, may be legally due and payable by reason and to the extent of any interest, if such there were, of the said Zachary Smith Reynolds in each of the said three trust estates herein mentioned, and to pay any compromise of any claim for any State or Federal estate or inheritance taxes, if any, against the said trust estates which may be directed or approved by this court or any other court of competent jurisdiction.

"(b) Second, to pay out of any one or more of the said trust estates to Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley the sum of $250,000 each, with interest at $3\frac{1}{2}$ per cent from 15 July, 1934, said sums to be reduced, however, by their proportionate part of whatever State or Federal estate or inheritance taxes may be paid, as heretofore provided in this judgment. It is the intention of these parties, as soon as said sums are available to them under the proper decrees of the courts to which this proposal is submitted, to give the sums provided in this paragraph to Mrs. Elizabeth Holman Reynolds, mother of Christopher Smith Reynolds, and they shall be reimbursed out of said trust estates before the distribution of the trust estates provided for in Sections C and D of this paragraph to the extent of any gift or transfer taxes which may be imposed upon them, or any of them, by reason of said gifts to Elizabeth Holman Reynolds.

"(c) Third, that the entire net trust estates established by the will and deed of Katherine S. Johnston, of which Zachary Smith Reynolds was the first beneficiary, now in the hands of the Safe Deposit and Trust Company of Baltimore, trustee, as trustee under said trust instruments, after making the payments provided for in Paragraph II (a) and (b) of this judgment, shall be immediately divided and paid by the trustee, free from all trusts, as follows:

"1. 25% to the legal guardian of Christopher Smith Reynolds.

"2. $37\frac{1}{2}$% to Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley.

"3. 37½% to the Cabarrus Bank and Trust Company and Annie L. Cannon, guardians of Anne Cannon Reynolds II.

"That the principal and accumulated income in the trust estate established by the deed of Katherine S. Johnston, of which Zachary Smith Reynolds was the first beneficiary, now in the hands of Safe Deposit and Trust Company of Baltimore, Maryland, as trustee under said instrument, shall be held by the trustee under the terms of said instrument, and the income therefrom accumulated for the benefit of the persons named in the next preceding paragraphs, numbers 1, 2, and 3, respectively, until 4 November, 1939, at which time the said trust estate shall be divided and paid by the trustee to the aforesaid persons in the proportions specified in said paragraphs.

"The court has considered paragraphs (1) and (2) of Item Fourth of the will of R. J. Reynolds, together with the will of Katherine S. Johnston, exercising the power of appointment therein conferred upon her, and holds that the income from that part of the common capital stock in the R. J. Reynolds Tobacco Company appointed by Katherine S. Johnston in trust for Zachary Smith Reynolds as the first beneficiary is now held by the Safe Deposit and Trust Company of Baltimore, trustee under the will of R. J. Reynolds, upon the trusts created by the will of R. J. Reynolds, of which Zachary Smith Reynolds was the first beneficiary, and shall be held and distributed by the Safe Deposit and Trust Company as trustee under the will of R. J. Reynolds, as provided in Paragraph II (d) of this judgment.

"The court further holds, upon a consideration of the said wills, that the shares of the common capital stock of the R. J. Reynolds Tobacco Company appointed by Katherine S. Johnston in trust for Zachary Smith Reynolds as the first beneficiary, shall be held by the Safe Deposit and Trust Company, as aforesaid, for the benefit of the persons, and in the proportions in subparagraphs 1, 2, and 3 of this paragraph, who are entitled to the distribution of the estate of Katherine S. Johnston, paying the income to said persons in said proportions until 4 November, 1939, when the shares of the common capital stock of the R. J. Reynolds Tobacco Company shall be delivered to them in said proportions, free from all trusts.

"In the event that Anne Cannon Reynolds II or Christopher Smith Reynolds should die prior to 4 November, 1939, the distribution of the share of the child so dying in the trust established by the deed of Katherine S. Johnston, and in the shares of the common capital stock of the R. J. Reynolds Tobacco Company appointed by the will of Katherine S. Johnston in trust for Zachary Smith Reynolds as the first beneficiary, shall be made on 4 November, 1939, to its next of kin on its mother's side to the exclusion of its next of kin on its father's side.

"(d) Fourth, that the entire net trust estate established by the will of R. J. Reynolds, of which Zachary Smith Reynolds was the first beneficiary, now in the hands of the Safe Deposit and Trust Company of Baltimore, as trustee under said instrument, after making the payments provided for in Paragraph II (a) and (b) of this judgment, shall be immediately divided by said trustee and held for the benefit of the following parties and upon the following terms:

"1. 25% for Christopher Smith Reynolds.

"2. 37½% for Anne Cannon Reynolds II.

"In calculating the proportions to be allotted as herein provided, the trust fund of $500,000 in which Anne Cannon Reynolds I is interested as provided in the original decree in this cause, which is to be modified as set out in Section I (a) of this judgment, shall, for the sole purpose of making such calculation, be valued as of 6 July, 1932, and added to the trust estate created by the will of R. J. Reynolds from which it was taken, without any deduction by reason of the interest therein of Anne Cannon Reynolds I, and in determining the 37½% allotted to Anne Cannon Reynolds II as herein adjudged the said trust fund of $500,000 shall be allotted to and treated as a credit upon the 37½% allotted to Anne Cannon Reynolds II at its full value on 6 July, 1932, without any deduction by reason of the interest therein of Anne Cannon Reynolds I.

"3. 37½% to the Safe Deposit and Trust Company of Baltimore, trustee, to be held by it in trust for the benefit of Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley as hereinafter provided in this paragraph.

"That between the date of the entry of this decree and 4 November, 1939, the Safe Deposit and Trust Company of Baltimore, trustee, shall pay to the legally constituted guardians of Christopher Smith Reynolds and Anne Cannon Reynolds II all of the income from the shares herein allotted to said infants in quarterly payments, and on 4 November, 1939, shall pay over and deliver to the legally constituted guardians of said Christopher Smith Reynolds and Anne Cannon Reynolds II the entire trust estates allotted to said infants by this paragraph of this judgment, free from all trust, and if either of said infants should die prior to 4 November, 1939, the income from the share allotted to said infant shall be paid to the next of kin of the said infant upon its mother's side, to the exclusion of the next of kin on its father's side, as herein provided, until 4 November, 1939, and on 4 November, 1939, the entire trust estate allotted to said infant by the terms of this paragraph shall be paid and delivered by the Safe Deposit and Trust Company of Baltimore, trustee, to the next of kin of the said infant upon its mother's side, to the exclusion of the next of kin on its father's side.

REYNOLDS *v.* REYNOLDS.

"That the 37½% allotted to Safe Deposit and Trust Company of Baltimore, trustee for Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, by this paragraph of this judgment shall be held by the Safe Deposit and Trust Company of Baltimore, trustee, under the will of R. J. Reynolds, as provided by the will of R. J. Reynolds, as if Zachary Smith Reynolds had died intestate and without leaving issue surviving him. The court hereby construes and interprets Item Fourth, paragraph (7), of the will of R. J. Reynolds, which is as follows, 'and should any of my said children die without having made a testamentary disposition of his or her share of my said estate and without issue living at the termination of said trust, then his or her share shall be held on like trusts for my surviving children and the then living issue of my deceased child *per stirpes,'* and holds that upon the death of Zachary Smith Reynolds intestate and without leaving issue surviving him the 37½% allotted by the terms of this paragraph of this judgment for the benefit of Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley shall be divided by the Safe Deposit and Trust Company of Baltimore, trustee, into three equal parts, which three equal parts shall be respectively added to and become a part of the trusts created by Item Fourth, paragraphs (4), (5), (6), and (7) of which the said Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley are the first beneficiaries; that Richard J. Reynolds arrived at the age of 28 years on 4 April, 1934, and is now entitled to receive one-third of the 37½% allotted to him as herein provided, free from all trust, and the Safe Deposit and Trust Company of Baltimore, trustee, is hereby directed to make the payment to him of one-third of said 37½% free from all trust, that Safe Deposit and Trust Company of Baltimore, trustee, shall hold ⅓ each of 37¼%, respectively, of each of the trusts created by Item Fourth, paragraphs (4), (5), (6), and (7), of the will of R. J. Reynolds, of which Mary Reynolds Babcock and Nancy Reynolds Bagley are, respectively, the first beneficiaries; that they will not be entitled to receive any income from said share prior to their respective 28th birthdays in excess of the sum of $50,000 provided for in Item Fourth, paragraph (5), of the will of R. J. Reynolds, but that they have the right, by trust indenture, to transfer their interest in the one-third of the 37½% allotted to each of them by this judgment to the trustees of the charitable trust referred to in paragraph 10 of their offer of settlement and petition in this cause, and in the event that they, or either of them, should die before reaching the age of 28, to direct the payment of said share to the trustees of said charitable trust by will, as provided in the first clause of Item Fourth, paragraph (7), of the will of R. J. Reynolds.

"That the shares of the trust estate of R. J. Reynolds, referred to in this paragraph as allotted herein, shall vest as of the date of this decree in the said Christopher Smith Reynolds, Anne Cannon Reynolds II, and Safe Deposit and Trust Company of Baltimore, trustee, for the benefit of Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, free from any claim or right of any of the other parties in and to the said trust funds, and free from any contingency by which any of the parties hereto might be prevented from claiming the share allotted to them upon the date fixed for distribution, free from all trust, by the terms of this judgment.

"(e) In order that the intention of the parties hereto may be attained, and the provisions of this judgment may be effectuated, the said parties, to wit: Christopher Smith Reynolds, the Reynolds heirs, and Anne Cannon Reynolds II, shall hold that portion of the said three trust estates herein allotted to him, her, or them absolutely free and clear from any and all claims of every nature, character, or description, which now or hereafter may be made against said portion by any other one of said parties; and that each of said parties, in consideration of the mutual transfers and releases herein decreed, shall be deemed to have transferred, conveyed, and released each to the other all right, title, and interest, present or future, which each of said parties may have in said three trust estates, other than the portion herein specifically allotted to each, and it is further decreed that this judgment shall act as a transfer, conveyance, and release of said respective interests as aforesaid; and it is herein further decreed that no party to this action shall now or henceforth have any right, title, or interest, or claim whatsoever, in any of said trust estates other than as herein specifically set forth; and it is herein further ordered and decreed that the proportionate part of each one of the parties above mentioned as hereinbefore set out shall absolutely and unconditionally vest in such party.

"(f) The personal estate of Zachary Smith Reynolds now held by Moses Shapiro as collector of said estate pursuant to the orders of Superior Court of Forsyth County after the payment of the debts of said estate and all taxes and other lawful charges therefrom, shall be divided equally between Elizabeth Holman Reynolds, Anne Cannon Reynolds II, and Christopher Smith Reynolds.

"III. That the determination and settlement of the rights of all parties, particularly including Anne Cannon Reynolds II and Christopher Smith Reynolds, as herein decreed is just, fair, and equitable; that it is for the best interests of all parties, and of all the present, prospective, or contingent beneficiaries of the three trusts hereinbefore mentioned; that such determination and settlement will substantially comply with the terms and conditions of the instruments creating said trusts,

considering the changed situation and condition of said parties in rela-
tion to each other, and the contingencies and uncertainties as to which
of said beneficiaries would be entitled to receive said trust estates, and
in what proportion; that it will, to a large extent, prevent a dissipation
and waste of a large part of the said trusts, and that it will accomplish
the objects and effectuate the intention of the creators of said trusts.

"IV. In the event that Christopher Smith Reynolds or Anne Cannon
Reynolds II should die before attaining his or her majority, then and
in that event any and all property allotted to said minor, or any interest
thereon which he or she takes under this judgment, shall vest in his or
her next of kin on his or her mother's side, to the exclusion of the next
of kin on his or her father's side.

"V. This judgment is based upon and entered in conformity with the
offer of settlement filed in this cause by Richard J. Reynolds, Mary
Reynolds Babcock, and Nancy Reynolds Bagley, and is entire and indi-
visible.

"VI. This cause is retained for further orders, for the purpose of per-
mitting the guardians or other representatives of minor parties to this
cause and the attorneys for any parties to this cause to file petitions for
allowance of compensation, which said allowances shall be fixed by the
judge of this court.

"VII. That the proposal hereby approved and this judgment be pre-
sented in the suit now pending in the Circuit Court of Baltimore City,
Maryland, hereinbefore mentioned.

> "CLAYTON MOORE, Special Judge, presiding at
> the Special 11 March Term, 1935, of the
> Superior Court of Forsyth County."

Anne Cannon Reynolds (Smith), Annie L. Cannon, one of the guard-
ians of Anne Cannon Reynolds II, and Safe Deposit and Trust Com-
pany of Baltimore, trustee, etc., duly made exceptions and assignments
of error and appealed to the Supreme Court. The material assignments
of error, without particular reference to same, and necessary facts will
be considered in the opinion.

*Hartsell & Hartsell* for Anne Cannon Reynolds Smith.

*Brooks, McLendon & Holderness* for Annie L. Cannon, one of the
guardians of Anne Cannon Reynolds II.

*Cansler & Cansler, William H. Beckerdite, Mabel C. Moysey, John M.
Robinson* for Cabarrus Bank and Trust Company, one of the guardians
of Anne Cannon Reynolds II.

*Polikoff & McLennan and William Graves* for R. C. Vaughn, next
friend of Christopher Smith Reynolds, infant.

REYNOLDS *v.* REYNOLDS.

*Charles McH. Howard for Safe Deposit and Trust Company of Baltimore, trustee.*

*Manly, Hendren & Womble, J. C. McDuffie of Atlanta, Ga., and Ratcliff, Hudson & Ferrell for R. J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley.*

*Attorney-General Seawell and Assistant Attorneys-General Aiken and Bruton for the State of North Carolina.*

CLARKSON, J. This controversy has heretofore been before this Court: *In re matter of the Guardianship of Anne Cannon Reynolds II,* 206 N. C., 276.

We think it unnecessary to discuss the question as to Anne Cannon Reynolds' (now Smith) right to be heard on this record, except as an *amicus curæ.* She is now of age and the mother and natural guardian of Anne Cannon Reynolds II. In this Court, through her counsel, Anne Cannon Reynolds (Smith) says that she approves the position taken by the Safe Deposit and Trust Company of Baltimore, trustee, and Annie L. Cannon, one of the guardians of Anne Cannon Reynolds II, but later in her briefs says: "The individual rights of this appellant acquired under and by virtue of the judgment of 4 August, 1931, have not been materially changed by the judgment of the court below, and, therefore, she asks nothing in her individual right. However, as natural guardian of her child, Anne Cannon Reynolds II, she desires that this Court be fully informed as to her position taken. This appellant has always expressed a desire that the matters in controversy in this cause be settled, as will appear from the judgment of 4 August, 1931, and her affidavit in the Cabarrus proceedings: 'Owing to the many family questions which were under consideration in reaching the family agreement approved by the court, and in view of the litigation now pending in Maryland involving many other family questions affecting not only the fortunes but the good name of affiant, her child, and the infant's family on both sides.' She believes that the only rights to be considered in this cause are those of her child and Christopher Smith Reynolds, and that they alone are entitled to the trust funds in controversy, and she is further of the opinion that these differences can now be settled without the interference of those who are asserting claims based on bare or very remote probabilities." That she took no part until order was issued to her, on 16 November, 1934, by the court. That the question of the validity of her divorce was not raised by her, but questioned (1) by the Reynolds heirs (Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley), (2) Cabarrus Bank and Trust Company, co-guardian, in its response to the interplea of Christopher Smith Reynolds (by his next friend, R. C. Vaughn), (3) Safe Deposit and Trust Com-

pany of Baltimore, trustee, when it answered the offer of settlement of
the Reynolds heirs. Further: "This appellant does not desire to have
the validity of her divorce questioned in the courts of this State, and
respectfully requests this honorable court not to direct that the same
be done. The Reynolds heirs, Christopher Smith Reynolds, and Cabar-
rus Bank and Trust Company, coguardian of Anne Cannon Reynolds II,
have each claimed the entire trust estates to which Zachary Smith Reyn-
olds was entitled, *but this appellant places her child in the custody of
this court and requests only that to which she is entitled.* In order that
the matters and things in controversy in this action might be finally
determined, this appellant respectfully requests this court to fully pro-
tect the rights of her infant child, Anne Cannon Reynolds II, *and to
declare in its opinion just what property interests the respective parties
are entitled to, and direct that judgment be entered accordingly,* giving
to each what the law and equity directs, no more and no less."

It would appear from the above that in the final analysis the mother
and natural guardian put her child in the "lap of the Chancellor."

It is well settled that ordinarily the admission of attorneys bind their
clients. "Admission of attorneys bind their clients in all matters relat-
ing to the progress and trial of the cause, and are in general conclusive."
1 Greenleaf on Evidence, 186; *Lumber Co. v. Lumber Co.,* 137 N. C.,
431 (438); *Bank v. Penland,* 206 N. C., 323 (324).

On 16 November, 1929, Zachary Smith Reynolds was married to Anne
Cannon. Both were minors, but of legal age to marry. On 23 August,
1930, Anne Cannon Reynolds II was born of the union. In a short period
of time after the marriage the parties to said marriage separated. Anne
Cannon Reynolds II, the infant, was left with her mother. On 4 Au-
gust, 1931, an action was instituted in the Superior Court of Forsyth
County by Anne Cannon Reynolds (now Smith). This action seems to
have been started under C. S., 1667, which gave the wife a legal right
to make her husband provide for her and her child necessary subsistence,
according to his means and condition in life; but it became elastic and
reached out and deprived the infant, Anne Cannon Reynolds II, of her
rights in the estate of her grandparents. The trusts set up under the
agreement for Anne Cannon Reynolds II, the infant, was $500,000.
Her portion is now estimated, under the facts of this record, to be worth
some $12,000,000 or more. It provided for Anne Cannon Reynolds
(now Smith) $500,000, which she in her brief says is not materially
changed by the present decree, and she asks nothing in her individual
right. The decree uses this language: "That the minor plaintiffs, Anne
Cannon Reynolds and Anne Cannon Reynolds II, upon the execution
and delivery of said contract and trust agreement and the setting up of
the trust estates therein provided, be and they are hereby declared for-

ever estopped and barred from making other or further claims for financial support, aid, or maintenance from the said Zachary Smith Reynolds, or any estate owned or left by him, whether the same be held in trust or otherwise, and from making further claim to the whole or any part of the trust estates created by the will of R. J. Reynolds or Katherine S. Johnston, distribution of said trust estates at the time fixed for distribution as provided in said wills, to be made to the persons entitled thereto *as if Zachary Smith Reynolds and Anne Cannon Reynolds had never been married and Anne Cannon Reynolds II had never been born."* The Safe Deposit and Trust Company of Baltimore, trustee, sets up these trust estates under the decree.

On 23 November, 1931, Anne Cannon Reynolds obtained a divorce from her husband, Zachary Smith Reynolds, in the Second Judicial District Court of the State of Nevada, and in and for the county of Washoe. On 29 November, 1931, Zachary Smith Reynolds was married to Elizabeth Holman, in Monroe, Michigan, and they resided together until his death on 6 July, 1932—under the age of 21 years. On 10 January, 1933, Christopher Smith Reynolds was born of said union. Thus, at his death, Zachary Smith Reynolds left two children—Anne Cannon Reynolds II and Christopher Smith Reynolds, in *ventre sa mere.* Under the laws of both the State of New York and the State of North Carolina, a will executed by a parent prior to the birth of a child is inoperative as to said child. The purported will in controversy was executed prior to the marriage of Zachary Smith Reynolds and Elizabeth Holman and prior to the birth of Christopher Smith Reynolds.

Before the Cabarrus County clerk, on 8 September, 1931, on petition of the father of Anne Cannon Reynolds, the Cabarrus Bank and Trust Company and Annie L. Cannon, on 5 November, 1931, were appointed guardians of the estate of Anne Cannon Reynolds II, alleging that she was entitled to the income from $500,000, the amount set up in the before mentioned decree.

On 24 March, 1933, the Safe Deposit and Trust Company of Baltimore, trustee, under the wills and deeds of the grandparents of Anne Cannon Reynolds II, filed a bill of complaint in the Circuit Court of Baltimore City, setting out in full the complete story of the tangled web, and raised certain questions of law and fact for determination. Conferences were held, letters exchanged between the attorneys for the guardians of Anne Cannon Reynolds II, in reference to a joint attack on the decree of 4 August, 1931, but of no avail. On 1 April, 1933, the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, finally filed in the Superior Court of Cabarrus County a petition setting forth the facts and praying for advice and instructions of the court in reference to filing a motion in the original cause in

Forsyth County, "for the purpose of attacking the validity of said judgment, in so far as it purported to affect the interests of its ward in said trust shares."

The said Annie L. Cannon, coguardian of Anne Cannon Reynolds II, filed an answer in which she asserted the validity of the original judgment, and purported to set forth the facts which she contended showed such validity. In her answer, the said Annie L. Cannon, coguardian aforesaid, set out in full her reasons for not attacking the validity of the. judgment originally entered therein, and urged the acceptance of a new and "tentative proposition" of Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, hereafter called the Reynolds heirs. The "tentative proposition" increased the $500,000 given in the Forsyth County judgment and decree $1,500,000—making a total of $2,000,000. This "tentative agreement" was approved by the court. On appeal to this Court, in the main opinion *In re Reynolds, supra,* it is said (at p. 293) : "The petition of the Cabarrus Bank and Trust Company, guardian of Anne Cannon Reynolds II, should have been granted." That (pp. 278-9) : "After reading and considering said petition and response thereto, and the affidavits appearing in the record, and the various exhibits appearing in the record, and after hearing argument of counsel, the Court, upon the undisputed facts, finds that the petitioner has shown reasonable, adequate, sufficient, and probable cause for filing a motion in the Superior Court of Forsyth County, in the action above entitled, praying that the decree in said action be set aside upon the following grounds," (p. 280) "it is the duty of the guardians to file the proper and appropriate motion in the said action in Forsyth County for the purpose of having the decree entered therein set aside in so far as it affects the rights of the said Anne Cannon Reynolds II, the merits of said motion to be finally passed upon and determined upon the hearing thereof in the Superior Court of Forsyth County. The Court further holds that the guardians should immediately take the necessary steps to protect the interests of their ward in the Maryland action referred to in the petition. The Court further holds that the alleged new proposal, purporting to be submitted for or on behalf of the relatives of Zachary Smith Reynolds, involving the establishment of a foundation to the memory of Zachary Smith Reynolds is not before the Court. That the persons for or on behalf of whom said proposal is submitted are not parties properly before this Court upon the hearing of the petition in this matter; that, consequently, in any event, this Court could not properly consider such alleged proposal upon the hearing of the petition herein; that, if any new proposal is to be made, it should be addressed to the Superior Court of Forsyth County, in the action to which all persons in interest are parties." *Adams, J.,* concurs in the result. *Stacy, C. J.,* concur-

20—208

REYNOLDS *v.* REYNOLDS.

ring, said (pp. 294-5) : "The ruling was evidently based upon the assumption that the Forsyth decree is valid, otherwise the amount probably surrendered is disproportionate to the amount tentatively offered. But the validity of the Forsyth decree was not before the Court for determination. The question was whether sufficient showing had been made to warrant the instruction that the validity of this decree should be challenged. Apparently the showing was such as to justify the court in informing itself upon the validity of this decree before finally foreclosing the rights of the infant ward in the respect suggested. Nevertheless, it is said the practical certainty of a million and a half under the circumstances disclosed by the record is better for the infant than the uncertainty of the quest for twelve millions. The matter was not presently before the court with sufficient knowledge and in such shape as to call for the exercise of its discretion on the acceptance or rejection of this tentative proposition. The two guardians are the only parties to this proceeding, and they alone in their representative capacity would be bound by the judgment. No ward can complain if his guardian in good faith and in the exercise of his best judgment pursues the mandate of the law and loses a tentative offer of settlement such as here disclosed, but he might question a departure from established rules of procedure."

*Justice Brogden,* concurring in result, said (pp. 296-7) : "Hence, the sole question before the chancellor was whether the minor, Anne Cannon Reynolds II, had the right to proceed to Forsyth County and lodge a motion to set aside a judgment which shut the door of the law in her face so far as asserting any further right in and to the property specified. There were no parties before the court except the guardians. The petition alleged grave irregularities and fatal defects in the Forsyth judgment. These allegations were denied and evidence offered in support of such denial. The New York will was not upon the lap of the chancellor. The family settlement and the laudable intentions of the family were not upon the lap of the chancellor. The actual validity of the Forsyth judgment was not upon the lap of the chancellor. The ultimate question was whether the minor had alleged and shown the existence of such facts, or probable facts, as to entitle her to be heard by the law of her country in a proceeding in Forsyth County to unloose the bar of that judgment. The guardians held in good faith opposite opinions as to the wisest course to pursue. Notwithstanding, it must be borne in mind that Anne Cannon Reynolds II is the heroine of the play and the clashing judgment of the guardians is incidental and secondary. The trial judge found that it was not for the best interest of the minor to be allowed to be heard in Forsyth County. Both the history and traditions of equity as held and applied in this State demonstrate that it always lends an attentive ear to the call of widows, orphans, and minors,

and in determining the bare right to be heard upon the merits of a proposition, it has not required the highest and most technical degree of proof. I am of the opinion that the facts disclosed in the record are sufficient to entitle Anne Cannon Reynolds II to a chance to be heard in the courts in a proper proceeding in Forsyth County. Of course, even a minor ought not to be heard in an assault upon a final judgment for inconsequential or captious reasons. Neither should the right to be heard upon the merits be denied because the evidence produced is not 'horse high, bull strong, and pig tight.' Therefore, I am of the opinion that the trial judge erred in denying to the minor the right to be heard upon the merits of the controversy. The Forsyth decree may have been eminently proper and advantageous not only at the time it was rendered, but even now. The proposed family settlement may be eminently wise and proper. That, however, is not the point. The right of the minor to question the proceeding in Forsyth in the due and orderly manner prescribed by law, is the point as I conceive it, and that right has been improvidently denied by the judgment rendered."

In accordance with the decision of this Court, the court below in its judgment found: "(1) That, in this action as originally constituted, the Cabarrus Bank and Trust Company, one of the duly appointed guardians of Anne Cannon Reynolds II, filed a motion on 30 April, 1934, to set aside the original judgment entered herein on 4 August, 1931, in so far as said judgment attempted to affect the rights of the said Anne Cannon Reynolds II in the trust estates, created by her paternal grandparents, hereinafter referred to. (2) Upon the filing of said motion, an order was duly entered herein making Annie L. Cannon, coguardian of the said Anne Cannon Reynolds II, a party defendant herein, and ordering her to show cause why the said motion should not be allowed; the said order also commanding the original defendants herein to file an answer which they, or any of them, might have to said motion within twenty days from the service of said order; and that said order, together with a copy of said motion, was duly served upon the original defendants herein and upon the said Annie L. Cannon, one of the guardians of Anne Cannon Reynolds II."

*Schenck, J.,* in *Power Co. v. Yount, ante,* 182 (184), speaking to the subject of the law of the case, says: "The order consolidating the summary proceeding with the action instituted in behalf of other creditors, since it was made in conformity with the former opinion in this case, is binding upon the appellant, and pretermits, if it does not preclude, any discussion of objections and exceptions thereto. 'A decision by the Supreme Court on a prior appeal constitutes the law of the case, both in subsequent proceedings in the trial court and on a subsequent appeal.'

*Newbern v. Telegraph Co.,* 196 N. C., 14; *Nobles v. Davenport,* 185 N. C., 162." *Betts v. Jones, ante,* 410 (411).

The record discloses that the court below found that all parties in interest, whether *in esse* or *in posse,* present and prospective, were made parties and before the court. Those of age and minors representing every vested or contingent interest and every class—the State of North Carolina, claiming its inheritance or succession taxes. All were made parties and by interplea became parties and filed fully their contentions. This case was tried in the court below, as this Court, when it was here, in its opinion said it should be tried. The court below had full power and authority to hear and determine the contentions. In fact, the attorney for Annie L. Cannon, coguardian of Anne Cannon Reynolds II, of long experience and learned in the law, wrote a letter on 5 June, 1931, which is in the record: "Touching the question of the power of a court of equity to ratify and approve a contract affecting the interests of an infant in trust funds, etc., when made by properly constituted guardians, and upon suitable findings of fact, I beg to call your attention to the case of *Bank v. Alexander,* 188 N. C., 671-2. The discussion under paragraph three of the opinion involves precisely the principle which we are considering. This seems to be the only immediate decision in our courts upon the precise question of the affirmation of a contract such as we are considering, although a fuller investigation than I have had time to make may disclose some other case. The question of the power of a court to authorize a compromise in infants' rights in controversies over real estates or property is rather exhaustively considered in 33 A. L. R., 105, *et seq.,* under an annotation dealing alone with this subject. You will observe that the Supreme Court of the United States, as well as a number of states, unqualifiedly asserts the power of a court of chancery to deal conclusively in such matters and, by proper decree, to place the subject beyond any possible future attack." The law of this jurisdiction is well stated in this letter.

In the main opinion in *In re Reynolds, supra,* at p. 291, we find: "Courts of equity look with a jealous eye on contracts that affect materially the rights of infants." *Justice Brogden,* in his concurring opinion, as quoted above, says, at p. 296: "Both the history and traditions of equity, as held and applied in this State, demonstrate that it always lends an attentive ear to the call of widows, orphans, and minors, and in determining the bare right to be heard upon the merits of a proposition, it has not required the highest and most technical degree of proof." The best interest of the infants is the star (such as the wise men saw in the East and followed), which we must follow to guide us in determining this tangled controversy, so as to do justice to all and bring peace to a distressing family situation.

REYNOLDS *v.* REYNOLDS.

The facts more fully concerning all the aspects:

The will of R. J. Reynolds established a trust, providing for a certain share therein, of which his son, Zachary Smith Reynolds, was to be the first beneficiary. The provisions pertinent to the present case are as follows:

(a) Upon reaching the age of twenty-eight years, the said Zachary Smith Reynolds was to receive the *corpus* of said share, together with the accumulated income thereon.

(b) Before reaching the age of twenty-eight years, if the said Zachary Smith Reynolds died leaving a will, the trust continued for the benefit of his devisees until the time when the said Smith would have arrived at the age of twenty-eight years (4 November, 1939), whereupon the *corpus* of said trust share was to be turned over to said devisees.

(c) Before reaching the age of twenty-eight years, if Zachary Smith Reynolds died intestate, leaving issue, the trust was continued for the benefit of his children living at his death, until the time when he would have arrived at the age of twenty-eight years, whereupon the trust should cease and the said trust share should become vested in his children then surviving.

(d) Before reaching the age of twenty-eight years, if Zachary Smith Reynolds died intestate "without issue living at the termination of said trust," his share was to be held "on like trusts" for the surviving children of the testator (R. J. Reynolds) and the then living issue of the testator's deceased children *per stirpes.*

(e) If all the testator's children and their issue died before the termination of the trusts, one-half of the trust estate was to go to the testator's wife, Katherine S. Reynolds (Johnston), and the other half to the testator's brothers and sisters then living, and the descendants then living of any deceased brothers and sisters, *per stirpes.*

The will of Katherine S. Johnston also established a trust providing for a certain share therein of which her son, Zachary Smith Reynolds, was to be the first beneficiary. The provisions pertinent thereto are as follows:

(a) The trust continued during the life of said Zachary Smith Reynolds.

(b) Upon his death, the *corpus* of the trust share went to his devisees, by will; and, "in default of such appointment" to his descendants "living at his death," with an immaterial proviso as to a limited continuance of the trust with respect to Class A common stock of R. J. Reynolds Tobacco Company.

(c) In default of appointment by Zachary Smith Reynolds, and in default of any descendants of his, the share in question was to be divided among "such of my husband, children, and descendants as are then liv-

ing, *per stirpes* and not *per capita,*" the husband taking a child's part, the share of such children as were then living to be held by the trustee for them upon the same trusts that the original shares of the estate of the testatrix were then held.

During her lifetime the said Katherine S. Johnston, by deed, also established a comparatively small trust creating a share, of which the said Zachary Smith Reynolds was the first beneficiary upon the same terms as those outlined in her will.

The Safe Deposit and Trust Company of Baltimore was appointed trustee in each one of the three trust instruments above described.

On 29 July, 1918, R. J. Reynolds died in Forsyth County. His will was properly probated. His estate was settled, and the residue thereof was turned over to the trustee, who has ever since acted in said capacity. The trustee holds separately the securities and personal property which constitute the share of which Zachary Smith Reynolds was the first beneficiary.

On 29 December, 1923, Katherine S. Johnston (formerly the widow of R. J. Reynolds) executed and delivered to said trustee a certain deed whereby she transferred and delivered to said trustee certain shares of stock in the R. J. Reynolds Tobacco Company to be held in trust for her four children, the share of Zachary Smith Reynolds was to be held in a trust similar to that outlined in her will above referred to.

On 24 May, 1924, Katherine S. Johnston died. Her will was probated, her estate was settled, and the trustee now holds separately the property, consisting of bonds, stocks, and securities, constituting the share of which Zachary Smith Reynolds was the first beneficiary, including the share of the individual estate of Katherine S. Johnston and the share of the property disposed of by her in the exercise of her power of appointment.

The judgment in the court below modifies the original judgment entered on 4 August, 1931. In so doing, it approves a complete settlement of all beneficial interests in the trust shares hereafter mentioned, and also approves a settlement of a claim of the State of North Carolina for inheritance taxes thereon.

*In re Reynolds, supra,* contains the decision of the Court upon a former appeal. Pursuant to that decision, the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, duly filed its motion to set aside the original judgment herein, in so far as it purported to affect the rights of its ward.

(a) The filing of this motion led to negotiations for a submission to the Court of a proposal for a final settlement of all questions in reference to a distribution of the trust shares involved.

(b) These questions had already been raised by a suit instituted in Maryland, on 24 March, 1933, by the Safe Deposit and Trust Company of Baltimore, the trustee under each of the three trusts involved. This suit is still pending. In it the Maryland court is requested to assume jurisdiction of the said trusts, and to settle all questions in reference to the distribution of the shares in question.

(c) The proposed settlement is as follows:

(1) Two million dollars to the State of North Carolina in full settlement of all its claims for inheritance taxes.

(2) The trust fund of $500,000 heretofore established for the benefit of Anne Cannon Reynolds I by the original judgment herein to remain intact, with certain modifications as to its disposition after the death of the said Anne Cannon Reynolds I. The amount of this trust fund is to be treated as a credit of $500,000 upon the 37½ per cent allotted to Anne Cannon Reynolds II, provided for in subsection 4 hereof.

(3) 25 per cent of the net trust shares to Christopher Smith Reynolds.

(4) 37½ per cent of the net trust shares to Anne Cannon Reynolds II.

(5) 37½ per cent of the net trust shares to Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley. In addition, there is to be paid to the Reynolds heirs the total sum of $750,000, which they intend to give to Elizabeth Holman Reynolds. The Reynolds heirs have formally expressed the intention of giving to a charitable foundation in North Carolina the entire 37½ per cent of the said trust shares allotted to them in the settlement.

The trusts in question were established by the will of R. J. Reynolds and the will and a deed of Katherine Smith Johnston. In this case, we are concerned only with that share in each of the three trusts of which Zachary Smith Reynolds was the first beneficiary.

Since the death of the trustors, and since the establishment of said trusts, several vital events have occurred which have given rise to questions of unusual difficulty in reference to a final distribution of the trust shares of which Zachary Smith Reynolds was the first beneficiary. Some of the more important of said questions are as follows:

(1) *The validity of the original judgment herein of 4 August, 1931:* If this original judgment herein were held to be valid, it would entirely eliminate the infant, Anne Cannon Reynolds II, from participation in said trust shares. In such event, these shares would go either to Christopher Smith Reynolds or to the Reynolds heirs, depending upon the result of other contingencies hereinafter stated. If, on the other hand, this original judgment were held to be void, Anne Cannon Reynolds II would get the entire trust shares, or one-half thereof, or none of them, depending upon the result of other contingencies hereinafter stated, and depending also, as to the shares in the R. J. Reynolds trusts, upon whether she was living on 4 November, 1939.

(2) *Validity of the Reno divorce:* If this divorce were held to be invalid, it would effect the rights of Christopher Smith Reynolds, and the distribution of the said trust shares would likewise be affected. In that event, the said shares might go entirely to Anne Cannon Reynolds II, or might go entirely to the Reynolds heirs, depending upon subsequent contingencies and the answers to other questions herein outlined.

(3) *Validity of alleged New York will:* The question as to the validity of this will involves a number of subsidiary questions, such as the capacity of a minor to change his domicile; the question as to whether Zachary Smith Reynolds really did change his domicile, even if he had the capacity to do so; and the further question as to whether, in any event, under a proper construction of the trust instruments, the appointive powers therein contained could be exercised by Zachary Smith Reynolds before he became twenty-one years of age. There might also be a question as to the law of what state would determine some of these questions. If the alleged will were held to be valid, the Reynolds heirs might take the entire trust shares, to the exclusion of the two children of Zachary Smith Reynolds. On the other hand, if the alleged will were declared invalid, the ultimate distribution of said trust shares would depend upon the other uncertainties herein outlined.

(4) *Death of either, or both, of the infants before 4 November, 1939:* It will be noted from subsection 7 of Item 4 of the will of R. J. Reynolds that if Zachary Smith Reynolds died intestate before reaching the age of twenty-eight years the trust share in question *was continued* for the benefit of his children *living at his death* until the time Zachary Smith Reynolds would have arrived at the age of twenty-eight years (4 November, 1939), when the trust would then *cease* and the said trust shares would then become *vested* in his children *then surviving.* In other words, there were two points of time:

(a) Death of Zachary Smith Reynolds—as to income.

(b) 4 November, 1939—as to vesting of the *corpus* and accumulated income.

Hence, in the absence of any settlement, if either child died before 4 November, 1939, it, and its representatives, would lose all interest in the R. J. Reynolds trust—both income and *corpus.* In this respect the Reynolds trust differs from the Johnston trusts, the shares of which would be distributed immediately upon the death of Zachary Smith Reynolds.

The pleadings and the evidence before the court when the present judgment was signed were entirely different from those before the court when the original judgment herein was entered.

(1) At the time the original judgment was entered herein, the pleadings contained no allegations upon which it could be based, in so far as

it attempted to affect the future rights of Anne Cannon Reynolds II in said trust shares. As stated in the opinion on the former appeal: "The complaint in said action sets out no controversy as to the property rights of the infant, Anne Cannon Reynolds II. There is no allegation as to any dispute in reference to the infant's contingent interests in said trust. No reason is alleged for seeking to alter or modify the terms of said trusts, in so far as the infant, Anne Cannon Reynolds II, is concerned. No necessity is set forth for seeking to eliminate or change her interests in said trust."

The pleadings have been enlarged to embrace all the controversies connected with the distribution of said trust shares; and all parties having any present, future, or contingent interests therein have been made parties to the action.

(2) *The existence of bona fide controversies:* At the time of the entry of the original judgment Zachary Smith Reynolds was living. Hence, there was not and could not then be any controversy in reference to the distribution of the said trust shares. Likewise, no question had then arisen as to the present or future rights of Anne Cannon Reynolds II in said trust shares. So far as she was concerned, there was nothing before the Court to form the basis of any settlement affecting her rights in said trust shares. Under these circumstances, the original judgment seems to have been entered hurriedly—without adequate investigation and consideration.

Now, the situation has completely changed. We not only have the precipitating fact of Zachary Smith Reynolds' death, but we also have the existence of a number of vital questions forming the subject of *bona fide* controversies between the parties. These controversies relate to the validity of the original judgment herein, the validity of the Reno divorce, and its effect on Christopher Smith Reynolds, the validity of the New York will, and other subjects. None of these questions had arisen at the time of the original judgment. Each one of them vitally affects the distribution of the said trust shares.

The existence of these vital *bona fide* controversies furnishes a real basis and a compelling reason for a family settlement or compromise.

R. J. Reynolds left four children by his wife, Katherine S. Reynolds. After his death his widow (who is now dead) married J. Edward Johnston, and by that marriage she left a son, J. Edward Johnston, Jr. The wills of R. J. Reynolds and Katherine S. Reynolds (Johnston) and her deed in reference to the property rights of their four children are practically the same. These children were Richard J. Reynolds, Mary Reynolds Babcock, Nancy Reynolds Bagley, and Zachary Smith Reynolds. Richard J. Reynolds has reached the age of 28 years, and, under the wills and deed, his interest has become vested.

On 30 April, 1934, as before set forth, in accordance with the opinion of this Court, the Cabarrus Bank and Trust Company, one of the guardians of Anne Cannon Reynolds II, filed a motion in the Superior Court of Forsyth County "to set aside the alleged judgment entered herein on 4 August, 1931, in so far as it attempts to affect the rights of said Anne Cannon Reynolds II in the trust estates created by her paternal grandparents, hereinafter more fully described, and in support of said motion, respectfully shows to the court as follows," etc.

On 21 May, 1934, the Safe Deposit and Trust Company of Baltimore, trustee, filed an answer.

On 21 May, 1934, Annie L. Cannon, coguardian for Anne Cannon Reynolds II, filed an answer.

On 24 October, 1934, certain other defendants filed an answer. On 12 November, 1934, the State, which was allowed to interplead, filed an answer. On 15 November, 1934, an interplea of Christopher Smith Reynolds, infant, by his next friend, R. C. Vaughn, was filed.

On 16 November, 1934, Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley, the only brother and sisters of Zachary Smith Reynolds (deceased), filed an offer of settlement and petition thereon. Responses were duly filed, all of which and more appear in the judgment in this cause.

Serious and grave questions of law and facts were raised. The judgment sets them out and we refer to same; all troublesome, but we will consider one for example: The validity and effect of the alleged will executed in New York by Zachary Smith Reynolds, as a basis of the offer of the brother and sisters of Zachary Smith Reynolds.

Section 49 of the judgment is as follows: "That prior to his death, to wit: On or about 21 August, 1931, the said Zachary Smith Reynolds executed an instrument in the form of a will complying with the law of the State of New York as to the execution of wills by residents of that State, and also complying with the requirements of C. S., 4131, as to the formalities for the execution of a will under the laws of the State of North Carolina, stating therein that he was a resident of Port Washington, Nassau County, in the State of New York; that in said paper the said Zachary Smith Reynolds undertook to execute the powers of appointment conferred upon him by the will of his father, R. J. Reynolds, and by the will and deed of his mother, Katherine S. Johnston, in favor of his brother, Richard J. Reynolds (Jr.), and his two sisters, Mary Reynolds Babcock and Nancy Reynolds Bagley, to the practical exclusion of all other persons, including his then living child, Anne Cannon Reynolds II, and his then wife, Anne Cannon Reynolds I, which said will referred to and ratified the judgment in this cause under date of 4 August, 1931, and made no further provision for Anne Cannon

Reynolds II and Anne Cannon Reynolds I, other than a bequest of $50,000. to each of them." This matter was discussed in the opinion *In re Reynolds, supra* (206 N. C., at pp. 290-1).

The New York statutes are as follows: Cahill's Consolidated Laws of New York (1930), ch. 13, sec. 10: "All persons, except idiots, persons of unsound mind, and infants, may devise their real estate, by a last will and testament, duly executed, according to the provisions of this article." Section 15: "Every person of the age of eighteen years or upwards, of sound mind and memory, and no others, may give and bequeath his or her personal estate, by will in writing."

Item 7 of R. J. Reynolds' will (a like provision is in the will of Katherine S. Johnston) in part is as follows: "Should any of my children die before he or she shall arrive at the age of twenty-eight (28) years, then the share of my estate which would have been payable to him or her, had he or she arrived at that age, shall be continued to be held by my said trustee for the use and benefit of his or her devisees by will until the time that such child would have arrived at the age of twenty-eight years, if he or she had lived, when the said trust shall cease and the estate shall then become payable to such devisees. . . . *And, should any of my said children die without having made a testamentary disposition of his or her share of my said estate* and without issue living at the termination of said trust, then his or her share shall be held on like trusts for my surviving children and the then living issue of my deceased children, *per stirpes,* and, should all of my said children and their issue die before the termination of the trusts, then, in that event, one-half of the trust estate in value at that time, principal and income, shall go to and belong to my said wife, and the other half to my brothers and sisters then living and the descendants then living of any of my deceased brothers and sisters, *per stirpes."*

Zachary Smith Reynolds attempted to execute a will leaving his property to his brother and sisters, as before stated. The brother and sisters make the offer of settlement. W. N. Reynolds, the uncle of Richard J. Reynolds, Mary Reynolds Babcock, Nancy Reynolds Bagley, and Zachary Smith Reynolds, and the great uncle of the two infants, Anne Cannon Reynolds II and Christopher Smith Reynolds, and all others who have contingent interests, in their answer say: "They adopt and approve the proposals of settlement heretofore made and filed in this cause by the defendants Richard J. Reynolds, Mary Reynolds Babcock, and Nancy Reynolds Bagley." When Zachary Smith Reynolds made the will in New York, he was over eighteen years of age. The father and mother of Zachary Smith Reynolds, under their wills and deed, gave him the right to will the property. This compromise judgment is not making a new will for R. J. Reynolds, but adjusting the differences

REYNOLDS *v.* REYNOLDS.

brought about by his son, Zachary Smith Reynolds, attempting to do what under the wills and deed he had a right to do. Of course it had to be done legally. In the judgment is the following: "Sec. 60 (III). That the determination and settlement of the rights of all parties, particularly including Anne Cannon Reynolds II and Christopher Smith Reynolds, as herein decreed is just, fair, and equitable; that it is for the best interests of all parties, and of all the present, prospective, or contingent beneficiaries of the three trusts hereinbefore mentioned; that such determination and settlement will substantially comply with the terms and conditions of the instruments creating said trusts, considering the changed situation and condition of said parties in relation to each other, and the contingencies and uncertainties as to which of said beneficiaries would be entitled to receive said trust estates, and in what proportion; that it will, to a large extent, prevent a dissipation and waste of a large part of the said trusts, and that it will accomplish the objects and effectuate the intention of the creators of said trusts."

We think, from the facts and circumstances of this case, that the above is correct—that the determination and settlement is "just, fair, and equitable."

In the present case new facts are set forth, the pleadings are enlarged to bring in all parties that have the remotest interest and sufficient allegations to cover every conceivable controversy, and the differences are vital and *bona fide* controversies. Paragraph 25 of the judgment, is as follows: "That the parties to this proceeding are all properly before the court; that either a next friend or a guardian *ad litem* has been duly appointed for each and every infant, whether born or unborn, who is now or may hereafter be in any way interested in the trust shares hereinafter mentioned; that all persons, whether minors or of age, and whether *in esse* or *in posse,* who are now or who may hereafter be interested in the trust shares hereinafter mentioned, have been made parties to this action, and have either appeared herein or been duly served with process herein and with copies of all the foregoing pleadings."

Did the court have the power and authority, under the facts and circumstances of this case, to render the judgment heretofore set forth? We think so. The able attorney for Annie L. Cannon, the coguardian of Anne Cannon Reynolds II, thought a court of equity had such power, and in a letter heretofore set forth cited authorities. We quote from same: "In *Bank v. Alexander,* 188 N. C., 667 (671), we find: 'The defendants excepted on the ground that the judgment is not binding upon the unborn contingent remaindermen. As we understand the record, the contingent remaindermen are represented not only by the trustee but by living members of their class, and under these circumstances the exception must be overruled. The question of law is discussed in the

following cases and need not be repeated here. *Ex parte Dodd,* 62 N. C., 98; *Overman v. Tate,* 114 N. C., 571; *Springs v. Scott,* 132 N. C., 548; *McAfee v. Green,* 143 N. C., 411; *Lumber Co. v. Herrington,* 183 N. C., 85." Paragraph 3, pp. 671-2, thoroughly discusses the right of a court of chancery over infants and to settle controversies such as was done in the present case.

In *Metzner v. Newman* (224 Mich., 324), 33 A. L. R., 98 (accurately stated in the syllabus), we find: "When infant's property rights are involved in litigation, the general guardian or guardian *ad litem* may negotiate for a compromise of the litigation, and, if the court approves it after an examination of the facts, the judgment or decree will be binding on the infants. When a chancery court has jurisdiction of the subject matter and parties some of whom are infants, it may pass upon and adjudicate the rights and equities of the infants, and the decree will be binding upon them. The adjustment of differences in a family over the settlement of estates will be favored even where infant legatees are interested, provided the proposed compromise of the differences is submitted to the court and a finding made that the settlement and compromise are for the best interests of the infants. A finding by the chancellor, with all the facts before him, that a will contest was in good faith, and that a compromise was for the best interests of infant legatees, will not be disturbed on appeal." At p. 105 we find: "This annotation is limited to compromises of contests over wills or settlement of estates, and other contests relating to property in which infants are interested." (Annotation at p. 105): "It has been held, however, in a number of cases, that the court has power to sanction compromises in the settlement of estates, or litigation generally, in which the property rights of infants are concerned," citing many authorities, including cases from U. S., Ill., Mass., Miss., Tenn., and numerous cases from England. *Reynolds v. Reynolds, ante,* 254.

In *Spencer v. McCleneghan,* 202 N. C., 662 (671), it is said: "We think those *in esse* or *in posse* are properly represented in this proceeding; all parties who could possibly have any interest in the estate are parties to this action and the infant and all unborn children who might have any interest are properly represented. From a careful examination of the facts, as found by the court below and the judgment rendered, we think a court of equity has jurisdiction in the matter. We think the judgment fair to all and not prejudicial to the parties who have either vested or contingent interests. The policy of the law is to encourage settlement of family disputes like the present, so as to promote peace, good will, and harmony among those connected by consanguinity and affinity. Equity favors amicable adjustments. . . . The court below found the facts at length with care, and rendered judgment that it

was to the best interest of all that 'the terms and provisions of said contract . . . be accepted, ratified, and approved and carried into effect.' " In the above case are cited many cases sustaining the above principle.

In *Price v. Price,* 133 N. C., 494 (504), *Justice Henry G. Connor* said: "The principles by which courts of equity are governed in sustaining and enforcing such contracts as to the one set out in this record are well settled and strongly stated by *Lord Hardwicke* in the case of *Stapilton v. Stapilton,* 1 Atk., 2 (2 White & Tudor's L. C., 1675, star p. 824). In speaking of a contract made for the purpose of settling a family controversy he says: 'It was to save the honor of the father and his family, and was a reasonable agreement; and, therefore, if it is possible for a court of equity to decree a performance of it, it ought to be done. . . . And, considering the consequence of setting aside this agreement, a court of equity will be glad to lay hold of any just ground to carry it into execution, and to establish the peace of a family.' "

*In re Will of McLelland,* 207 N. C., 375 (376), *Chief Justice Stacy* said: "Family settlements are to be commended (*Tise v. Hicks,* 191 N. C., 609, 132 S. E., 560), and much is permitted to be done by consent of the parties," etc.

In the cases of *Bank v. Alexander, supra,* and *Spencer v. McCleneghan, supra,* each of these involved a trust in which there were future and contingent rights of infants, both *in esse* and *in posse.*

In *Overman v. Tate,* 114 N. C., 571 (574), cited in the *Bank case, supra,* we find: "In accordance with this policy it was laid down by *Lord Hardwicke* in the leading case of *Hopkins v. Hopkins,* 1 Atk., 590, that, 'If there are ever so many contingent limitations of a trust it is an established rule that it is sufficient to bring the trustees before the court, together with him in whom the first remainder of inheritance is vested; and all that may come after will be bound by the decree, though not *in esse,* unless there be fraud and collusion between the trustees and the first person in whom the remainder of inheritance is vested.' "

In 2 Pomeroy Equity (4th Ed.), sec. 850, it is said: "Compromises, where doubts with respect to individual rights, especially among members of the same family, have arisen, and where all the parties, instead of ascertaining and enforcing their mutual rights and obligations, which are yet *undetermined and uncertain,* intentionally put an end to all controversy by a voluntary transaction by way of a compromise, are highly favored by courts of equity."

In 69 C. J., at page 1274, we find the statement: "As a general rule, the beneficiaries under a will may validly contract with other interested persons in regard to their respective interests in the estate, and in this manner effectively compromise their claims, if they are conflicting, or

else so divide or settle the estate that all are bound by the agreement. Such contracts, being in the nature of family settlements, they are usually favored by the courts," citing a number of cases, including *Spencer v. McCleneghan, supra.*

A good statement of the rule, together with its limitations, is found in 65 C. J., pp. 683-4, as follows: "A court of equity has power to do whatever is necessary to preserve a trust from destruction, and, in the exercise of such power, it may, under some circumstances, modify the terms of a trust to preserve it. The court should have due regard for the intention of the settlor, and, in exercising its jurisdiction, should be exceedingly cautious. The power of the court is exercised not to defeat or destroy the trust but to preserve it. The exercise of the power can only be justified by some exigency which makes the action of the court in a sense indispensable to the preservation of the trust, and in such cases the court may, as far as may be, *occupy the place of the settlor and do with the trust fund what the settlor would have done had he anticipated the emergency.* The trust will not be modified in violation of the settlor's intention, merely because the interest of the parties will be served by doing so. Where a contingency arises, however, such that the estate may be totally lost to the beneficiaries, equity will not permit such loss for lack of power to modify the trust."

If the present settlement is rejected, and the parties relegated to long and exhausting litigation, the primary purpose of the trusts in question will be defeated. By the present judgment, the primary objects of the trust are preserved. As is stated in the case of *Curtiss v. Brown,* 29 Ill., 201 (230): "Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency. . . . From very necessity a power must exist somewhere in the community to grant relief in such cases of absolute necessity, and under our system of jurisprudence that power is vested in the court of chancery."

The cases of *Williams v. Williams,* 204 Ill., 44, which is cited in the *Spencer case, supra,* and *Wolf v. Uhlemann,* 156 N. E., 334, which cites *Williams v. Williams, supra,* are similar in principle to the present case.

Speaking of a chancellor, Black's Law Dictionary (3d Ed.), p. 308, says: "He is the general guardian of all infants, idiots, and lunatics, and has the general superintendency of all charitable uses, and all this, over and above the vast and extensive jurisdiction which he exercises in his

judicial capacity in the supreme court of judicature, of which he is the head.    Wharton."

The court of chancery is a court having the jurisdiction of a chancellor; a court administering equity and proceeding according to forms and principles of equity.

Const. of N. C., Art. IV, sec. 1, in part is as follows: "The distinctions between actions at law and suits in equity, and the forms of all such actions and suits, shall be abolished; and there shall be in this State but one form of action for the enforcement or protection of private rights or the redress of private wrongs, which shall be denominated a civil action," etc.    This section abolished the distinction between actions at law and suits in equity, leaving such rights and remedies to be enforced in the one court, which theretofore had administered simply legal rights. *Peebles v. Gay,* 115 N. C., 38 (42).    Under this section and Article IV, sec. 20, the Superior Courts became the successors of the courts of equity, having their jurisdiction and exercising their equitable powers, unless restrained by statute.    *In re Smith,* 200 N. C., 272, 274.    Legal and equitable rights and remedies are now determined in one and the same action.    *Woodall v. North Carolina Joint Stock Land Bank,* 201 N. C., 428.

The able, careful, and painstaking judge sat in the court below as a chancellor—as general guardian of both infants.    There existed a controversy between the two guardians of Anne Cannon Reynolds II.    The two infants, Anne Cannon Reynolds II and Christopher Smith Reynolds, as it were, are put in the "lap of the chancellor."    The chancellor in the court of equity and conscience heard all the evidence.    His jurisdiction was to hear and determine the cause and to enter judgment.    The judgment which was entered is fully established by reason and authority. As to the equity of the settlement—we think all of the principles of equity and natural justice require that the issues existing between the parties be settled for all time, and that the parties should not be relegated to the litigation which is inevitable if the judgment of the court below is reversed—and we think it should not be reversed.    This seems to be the wish of all parties, except one of the guardians (Annie L. Cannon, coguardian of Anne Cannon Reynolds II), and the Safe Deposit and Trust Company of Baltimore, trustee, which naturally wants to be protected on account of the trust funds held by it.    The present judgment gives Anne Cannon Reynolds II, the infant, some $9,000,000.    The former judgment of 4 August, 1931, gave her only $2,000,000.    This, at the time, was satisfactory to Annie L. Cannon, coguardian of Anne Cannon Reynolds II, but not so with the other guardian—the Cabarrus Bank and Trust Company.    It asked to be heard in a court of equity, which was allowed.    The differences between these guardians cannot affect the

rights of these infants. May we be so bold as to quote an old adage: "When passion blows the breeze, let reason guide the helm." We think the Superior Court of Forsyth County had power and authority to hear and determine the cause and had jurisdiction over the trustee, which enabled the court to proceed to judgment.

We do not think the appearance of the trustee was special. In the original action herein, the trustee entered a general appearance and filed an answer, from which we quote as follows: "It (the trustee) submits its rights, duties, and discretion in the premises to the determination and decision of this honorable court." Thereafter, when the Cabarrus Bank and Trust Company filed its motion in Forsyth County to set aside the original judgment herein, the trustee again, without any qualification, came in and filed an answer to said motion. The Reynolds heirs filed their petition, setting forth the offer of settlement, the trustee again came in and filed an answer to said petition, but in the beginning of the answer, for the first time these words appeared: "Specially appearing under protest, as hereinafter stated." An analysis of this last-mentioned answer, however, will show that the above-quoted words were not used for the purpose of entering a special appearance in the sense that the trustee was either denying or withholding its personal appearance, but the words were used for the purpose of insisting upon the contention that even with the trustee personally before the court, the court was without jurisdiction, because: ". . . all of the property and investments held in said three trusts are located in the State of Maryland, which is the sole *situs* of the administration of said trusts. Respondent (trustee) is advised, and therefore says, that the courts of said state alone have jurisdiction over the administration of said trusts, and that especially the Circuit Court of Baltimore, a court of said state having full equity jurisdiction, is the proper court to finally determine such questions as have arisen in reference to the administration of said trusts, and has, by virtue of the proceedings hereinbefore recited, already obtained specific jurisdiction to finally determine such questions."

In *Buncombe County v. Penland,* 206 N. C., 299 (304), we find: "If a defendant invoke the judgment of the court in any manner upon any question, except that of the power of the court to hear and decide the controversy, his appearance is general."

The trustee has personally appeared in this one action on three different occasions, to wit: (a) by filing an answer when the action was first instituted in August, 1931; (b) by filing an answer to the motion of the Cabarrus Bank and Trust Company to set aside the original judgment; and (c) by filing an answer to the petition of the Reynolds heirs setting forth the proposal of settlement. At no time has it taken the position that it itself was not personally before the court. It has simply con-

tended that the court was without jurisdiction because the trust *res* was beyond the border of the State. This, of course, was not the entry of a special appearance in so far as personal jurisdiction over the trustee was concerned.

The record shows that the trustee has repeatedly acted upon the assumption that the trusts in question were being administered under the supervision of the courts of this State. Whenever any question has heretofore arisen in reference to the administration of said trusts, such question has been referred to the courts of this State for decision. We refer to the following instances:

(a) *Upon the death of Katherine S. Johnston, a question arose* as to the amount of net income distributable to each child of R. J. Reynolds after attaining the age of twenty-one years, and before attaining the age of twenty-eight years. This question involved a construction of the will of R. J. Reynolds. For a determination of this question, the trustee applied—not to the courts of Maryland—but to the courts of North Carolina. In order to have said question determined, the trustee instituted an appropriate action in the Superior Court of Forsyth County, North Carolina, wherein said question was submitted to and determined by the court, a judgment settling this question being signed by Hon. Wm. F. Harding, judge presiding at the May, 1927, civil term of the Superior Court of Forsyth County. The judgment so rendered has ever since been complied with by the trustee in the administration of the trust.

(b) *Thereafter, a further question arose* in reference to the proper construction of paragraph 6 of Item 4 of the will of R. J. Reynolds. For a decision of this question, an action was instituted in the Superior Court of Forsyth County by young R. J. Reynolds against the trustee and all the other trust beneficiaries, for the purpose of obtaining a construction of said paragraph of the will of R. J. Reynolds. In that action, the trustee filed an answer and a judgment was entered, from which an appeal was taken to the Supreme Court of North Carolina, by which the judgment was affirmed. *Reynolds v. Trust Co.,* 201 N. C., 267.

(c) *When this original action was instituted,* in August, 1931, the trustee came in and voluntarily submitted itself to the jurisdiction of the court. There was no qualification whatever to its appearance. Although the original judgment which was entered herein altered the terms of the trust instruments in a radical manner, the trustee raised no question as to the jurisdiction of the court to enter such judgment. On the contrary, in a subsequent pleading, it states: "Your respondent was advised that this court did have jurisdiction, and that all necessary parties were brought in to sustain such jurisdiction and make the judg-

ment or decree which was passed valid and binding." After the entry of said original judgment, the trustee filed an itemized report showing in detail a compliance with said judgment.

The trusts in question are "resident trusts" of North Carolina, over which the courts of this State have primary jurisdiction. For instance, the following facts are noted: (a) The wills creating the trusts were executed by persons who were residents of and domiciled in North Carolina. (b) These wills were probated in North Carolina. (c) The *corpus* of the trusts consisted, and still consists, of intangible personal property, to wit: Bonds and corporate stocks. (d) When said wills were executed and probated, the beneficiaries of the trusts were residents of and domiciled in North Carolina. (e) Although it is true that a Maryland corporation is appointed trustee in each of the two wills in question, it is also true that each will (R. J. Reynolds and Katherine S. Johnston) gives to residents of North Carolina the power to change such trustee at any time. Hence, the courts of this State have primary jurisdiction thereof.

In 1 Perry on Trusts and Trustees (7th Ed.), sec. 71, p. 56, the following statement of the rule appears: "If a trust is created by the will of a citizen of a particular state, and his will is allowed by the probate court of that state, and a trustee is appointed by the probate court, courts of equity will have jurisdiction over the trust, although both the trustee and the property are beyond the jurisdiction of the court. *Chief Justice Bigelow,* in determining this point, said: 'The residence of the trustee and *cestui que trust* out of the commonwealth does not take away the power of this court to regulate and control the proper administration of trust estates which are created by wills of citizens of this state, and which have been proved and established by the courts of this commonwealth. The legal existence of the trust takes effect and validity from the proof of the will, and the right of the trustee to receive the trust fund is derived from the decree of the probate court. If the trustee is unfaithful or abuses his trust, that court has jurisdiction to remove him in concurrence with this court on the application of those beneficially interested in the estate.' "

In *Swetland v. Swetland,* 105 N. J. Eq., 608, 149 Atl., 50, at p. 52, the Court said: "The rule of law is well settled that the courts of the testator's domicile and of the state in which the will is probated have primary jurisdiction over testamentary trusts. *McCullough's Executors v. McCullough,* 44 N. J. Eq., 313, 14 A., 642; *Marsh v. Marsh's Executors,* 73 N. J. Eq., 99, 67 A., 706; *Davis v. Davis,* 57 N. J. Eq., 252, 41 A., 353; *Murphy v. Morrisey & Walker,* 99 N. J. Eq., 238, 132 A., 206; *Hewitt v. Green,* 77 N. J. Eq., 345, 77 A., 25; 65 C. J., 895.

The Safe Deposit and Trust Company of Baltimore, trustee, acquired its title to the two testamentary trusts from testators domiciled in North Carolina and solely by reason of the effect of their wills and the laws of this State.   Whatever uncertainty may have existed on this question has been settled by four decisions of the Supreme Court of the United States.   *Farmers Loan & Trust Co. v. Minnesota,* 280 U. S., 204, 74 L. Ed., 371; *Baldwin v. Missouri,* 281 U. S., 586, 74 Law Ed., 1056; *Beidler v. S. C. Tax Commission,* 282 U. S., 1, 75 Law Ed., 131; *First National Bank of Boston v. Maine,* 284 U. S., 312, 76 Law Ed., 313.

The cases involved the right of states other than that of the domicile of the decedent to levy inheritance taxes on intangible personal property. They include every form of intangible property.   The tax was held void in each case under the due process clause of the Fourteenth Amendment on the ground that such property can be transferred in only one place and under one law.   It may be conceded that tax cases frequently do not furnish a safe guide for the decision of questions involving jurisdiction, but, since the decision in these cases are rested upon a concept of due process of law, there is no escape from the conclusion that they apply to all questions of transfer upon the event of death, and that such transfers occur in one place and under one law, and that judgments of the courts of that place define the instrument of title and give effect to the transfer of the property, which are entitled to full faith and credit in all of the states.

*Elements of jurisdiction in this case:* (1) Jurisdiction over the domicile of the creator of the trust and the instrument creating it.   (2) Jurisdiction over one or more of the beneficiaries of the trust.   (3) Jurisdiction over the whole or part of the property constituting the trust.

In this case the following classes of persons are represented by some-one *in esse:* (1) Two claimants as issue of Zachary Smith Reynolds. (2) Three children of R. J. Reynolds and Katherine S. Johnston.   (3) Grandchildren of R. J. Reynolds, the issue of his children who are now living.   (4) A brother and sister of R. J. Reynolds.   (5) Issue of the brothers and sisters of R. J. Reynolds.   All possible classes who could be interested in the outcome of this case are represented.

We have read with care the able and exhaustive briefs of the Safe Deposit and Trust Company of Baltimore, trustee, and that of Annie L. Cannon, coguardian of Anne Cannon Reynolds II.   We cannot sustain the contention made in their briefs.   But Annie L. Cannon, coguardian of Anne Cannon Reynolds II, in closing her brief, says: "She has sought to lay before the Court all the pertinent facts within her possession bearing upon the issues involved, and to call to the Court's attention the legal authorities governing same.   She has the care and custody of this child and paramounts its interest and welfare above all else.   She prays

this honorable court, in the exercise of its sound judgment, to instruct her in the further performance of her duties."

In the judgment of compromise the State of North Carolina was awarded $2,000,000 in settlement of its inheritance tax claim. It seems as if the Safe Deposit and Trust Company of Baltimore, trustee, alone appeals from the judgment. In the brief of the Attorney-General and his able assistants is the following: "There is still an open question in this State as to the basis of computation of the inheritance tax in cases where the property rights of the parties have been litigated and their interest determined by a compromise judgment. The holdings in other jurisdictions, where this question has arisen, are about evenly divided and contradictory. Note 78 A. L. R., 716. In the most favorable aspect of the controversy, the State could not hope to be materially benefited by independently litigating the serious factual questions involved, either as to the amount or security of the tax, and, therefore, the offer of compromise was accepted."

The brief of the Safe Deposit and Trust Company of Baltimore, trustee, expressly waives all questions as to the imposition of the tax except the question of its constitutionality as being violative of the Fourteenth Amendment to the Federal Constitution. This suggested constitutionality is referred to two grounds: (a) That the imposition of the tax is by retroactive law, since R. J. Reynolds died before the enactment of the first State Revenue Act containing the applicable section of the law. (b) That the trust estate had no *situs* in North Carolina, and this State had, therefore, no taxing jurisdiction. The Attorney-General and his assistants, in an elaborate and carefully prepared brief, argue and cite authorities contrary to the view taken by the Safe Deposit and Trust Company of Baltimore, trustee, and we agree with their view without setting same forth in detail.

N. C. Code of 1935 (Michie), 7880 (1). "Fifth. Whenever any person or corporation shall exercise a power of appointment derived from any disposition of property made either before or after the passage of this act, such appointment, when made, shall be deemed a transfer taxable under the provisions of this act, in the same manner as though the property to which such appointment relates belonged absolutely to the donee of said power, and had been bequeathed or devised by such donee by will, and the rate shall be determined by the relationship between the beneficiary under the power and the donor; and whenever any person or corporation possessing such power of appointment so derived shall omit or fail to exercise the same within the time provided therefor, in whole or in part, a transfer taxable under the provisions of this act shall be deemed to take place to the extent of such omission or failure, in the same manner as though the persons or corporations thereby becoming

entitled to the possession or enjoyment of the property to which such power related and succeeded thereto by will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure." Sec. 7880 (17)—the trustee to deduct tax.

In the former opinion of this Court (206 N. C., 276-290), on the appeal of the Cabarrus Bank and Trust Company, coguardian of Anne Cannon Reynolds II, we said in the main opinion: "The alleged will of Zachary Smith Reynolds appears to be inoperative and void." The wills and deed of the parents of Zachary Smith Reynolds gave him the right to make a will—exercising the power of appointment given him was one of the serious and *bona fide* questions that brought about the compromise. He made the will in controversy to his brother and sisters, who made the "offer of settlement."

But, however conclusive the arguments as to the legality and constitutionality of the tax, we do not need to rely on the strict application of these legal principles to sustain the judgment of the court below, affirming the tax. It was a settlement by compromise and agreement in a matter which was a legitimate subject of compromise, in a court of competent jurisdiction, with all the parties affected represented. The appeal is by the trustee alone in this case, all the *cestuis que trustent* having agreed, could not properly raise the propriety of the action of the chancellor in advising the guardians of infant parties, and in approving the compromise.

A liberal construction will be given to inheritance tax statutes to the end that all property fairly and reasonably coming within their provision may be taxed. *State v. Scales,* 172 N. C., 915. See, also, *Norris v. Durfey,* 168 N. C., 321. Under this liberal construction in favor of the government, every transfer of property that could be reasonably brought within the purview of the law has been subjected to taxation, *Norris v. Durfey, supra.* "The theory on which taxation of this kind on the devolution of estates is based and its legality upheld is clearly established and is founded upon two principles: (1) A succession tax is a tax on the right of succession to property and not on the property itself. (2) The right to take property by devise or descent is not one of the natural rights of man, but is the creature of the law"—*Brown, J., In re Morris Estate,* 138 N. C., 259, cited and approved in *Rhode Island Hospital Trust Co. v. Doughton,* 187 N. C., 263, 267. See *Waddell v. Doughton,* 194 N. C., 537.

In the judgment is the following: "60 (f). Upon a thorough and complete consideration of all the facts and circumstances relating to the claim of the State of North Carolina for said taxes, the court finds as a fact that the settlement of the taxes herein referred to is for the best interest of all parties concerned, including the infants, Anne Cannon

Reynolds II and Christopher Smith Reynolds, and said settlement is hereby fully approved by the court, and the guardians of said infants are hereby advised, instructed, authorized, and empowered to participate in said settlement on behalf of said infants, and it is hereby ordered and decreed that the Safe Deposit and Trust Company of Baltimore, trustee, out of said trust funds, pay to the State of North Carolina the sum of two million dollars in full settlement of any and all claims or demands which the State now has or may hereafter have by reason of the things and matters set forth in the intervening complaint herein, such payment to be made solely out of the trust estates created by the will of R. J. Reynolds and the will and deed of trust of Katherine S. Johnston, of which Zachary Smith Reynolds was the first beneficiary in proportion to their respective values as of the date of this decree, and nothing herein to impose any personal liability upon any of the parties to this action. That the said sum of $2,000,000 is to be paid to the State of North Carolina when and if this decree becomes effective, and shall be in full settlement of any and every claim of the State of North Carolina for inheritance taxes, penalties, and interest."

Under the facts and circumstances of this case, we think the settlement of taxes correct. The court below in the judgment (I) says: "That the original judgment entered herein on 4 August, 1931, be and it hereby is modified as follows," etc., and sets forth wherein it is modified. We think all this was done in compliance with the former opinion of this Court, *In re Reynolds, supra.*

Frequently, on changed conditions, equity steps in and gives relief. In *Starkey v. Gardner,* 194 N. C., 74, it was in regard to restrictive covenants in deeds. In *Raleigh v. Trustees of Rex Hospital,* 206 N. C., 485, equitable relief was granted on account of changed conditions, and the board of trustees of Rex Hospital was permitted to borrow money by giving a lien on the property to remodel present building or erect new building. In the *Curtiss case, supra,* we repeat: "From very necessity a power must exist somewhere in the community to grant relief in such case of absolute necessity and under our system of jurisprudence that power is vested in a court of chancery."

All the facts are fully, elaborately, and carefully set out in the record and the judgment which we set forth above, covering every aspect of the controversy. Due care has been taken in so important a controversy, where the property rights of infants are concerned, to set forth all the facts in the case. We think there was sufficient evidence to support the findings of fact in the court below on the different aspects of the controversy.

The court below found the compromise, as embodied in the judgment appealed from, fair, just, and equitable in regard to the property rights

of these infants and all parties who had an interest, contingent or otherwise. The court below had power and authority to render the judgment. In this jurisdiction the courts, for perhaps a hundred years, have upheld family settlements, and the general policy of the courts has been to encourage compromise of litigation. In regard to infants, this power and authority is lodged in the chancellor in a court of equity. It seems as if justice and righteousness to the infants and all parties has been embodied in the judgment, and should bring peace and harmony. We do not think that any of the exceptions and assignments of error made by the appealing parties can be sustained.

It is the duty of both of these guardians to set up this judgment in the suit now pending in the Circuit Court of Baltimore, Maryland, heretofore mentioned.

For the reasons given, the judgment of the court below is

Affirmed.